Breitel, J.
Involved on this appeal is the vacatur of an attachment of future rents to become due on New Mexico property. Plaintiff appeals from the vacatur and the consequent dismissal of his complaint for lack of jurisdiction.
Plaintiff Classman, a New York resident, sued for real estate brokerage commissions. Defendants are the New Mexico owners of a building in that State. The tenant is an out-of-State corporation doing business in this State. In order to obtain quasi in rem jurisdiction over the nonresident defendants (N. Y. City Civil Court Act [CCA], § 405, subd. [c], counterpart to CPLR 314, subd. 3) plaintiff obtained a warrant of attachment and caused a levy to be made on the tenant in New York. Plaintiff also claims personal jurisdiction over defendants on the ground that the nonresident defendants transacted business in the State out of which the cause of action arose (CCA, § 404, subd. [a], par. 1, counterpart to CPLR 302, subd. [a], par. 1).
The Civil Court held that there was no jurisdiction (51 Misc 2d 535); the Appellate Term reinstated the attachment and the complaint (52 Misc 2d 618); and the Appellate Division, agreeing with the Civil Court, vacated the attachment and dismissed the complaint (28 A D 2d 974).
Because it is concluded that there was no jurisdiction over the defendants on either basis, the vacatur and dismissal should be affirmed.
Plaintiff, a licensed real estate broker, allegedly, through a series of telephone calls, letters, and a telegram, entered into a brokerage agreement with defendant owners, who were at no time physically present in New York, for the procurement of a buyer for the New Mexico property. A suitable buyer, he alleges, was found. The owners agreed to accept the buyer’s offer, but subsequently refused to sign a written contract, and failed to pay the broker the agreed commissions.
I. Quasi in rem jurisdiction
The owners had in 1962 leased the land and building, the subject of the alleged brokerage agreement, to Fireman’s Fund *358 Insurance Company, under a 20-year net lease expiring in 1983. Only the destruction or condemnation of the premises, or a breach of the covenant of quiet enjoyment, could materially affect the duty of the lessee to pay rent. The rent was reserved on a monthly basis, to be paid on the first day of each calendar month, commencing on the first day of the term. On December 20, 1965, broker obtained (pursuant to CCA, §§ 209, 801) an order of attachment, which was levied upon the tenant, Fireman’s Fund, on December 21, 1965. Personal service on the defendants in New Mexico (pursuant to CCA, § 405) was made the first week in January and plaintiff was given additional time to file proof of service. At the time of the levy, the rent due December 1 had already been paid on December 3. No further rent was due until January 1. On January 3, tenant paid the rent then due, $1,398.10, to the Sheriff. The property was sold to another purchaser in January and no subsequent rent has been paid to the Sheriff.
CPLR 6202 provides that any debt or property against which a money judgment may be enforced under CPLR 5201 is attachable. There are three kinds of things subject to execution, and the same was to some extent true under the Civil Practice Act.
■ The first is a debt past due, or yet to become due, certainly, or upon demand, which is always an intangible (CPLR 5201, subd. [a]). The second is property, real or personal, tangible or intangible, which includes vested or unvested interests (CPLR 5201, subd. [b]). The third is income of various kinds, but subject to preconditions before it is available to levy by execution, and most often limited to garnishing of 10% (CPLR 5233, but compare 5226).
On any ordinary analysis, particularly any economic analysis, future rents might be treated either as a debt or as a form of income.
A debt to be attachable must be “ past due or * * * yet to become due, certainly or upon demand of the judgment debtor ” (CPLR 5201, subd. [a]). Where a duty to pay is conditioned on the creditor’s future performance, or upon contractual contingencies, there is no debt certain to become due (see Sheehy v. Madison Sq. Garden Corp., 266 N. Y. 44, 47; Herrmann & Grace v. City of New York, 130 App. Div. 531, 535, affd. 199 N. Y. 600). An obligation to pay rent, it has been *359 held, is not a debt and is not certain to become due (see Matter of Ryan, 294 N. Y. 85, 95). Thus, in the Ryan case, it was said, “ The ‘ covenant to pay rent creates no debt until the time stipulated for the payment arrives * * * It is not a case of debitum in praesenti solvendum in futuro. On the contrary, the obligation upon the rent covenant is altogether contingent. ’ In some contingencies the stipulated rent payable in the future by a lessee for the right to occupy leased premises might never become due.” (Matter of Ryan, supra, p. 95.)
Seider v. Roth (17 N Y 2d 111) and Simpson v. Loehmann (21 N Y 2d 305), relied on by plaintiff, are hardly applicable. Those cases depend upon the construction that an indemnitor’s duty to defend is a present duty and, therefore, a current asset. Notably, in those cases, there was no special effort made by the majority to classify contractual duties as between debt and property, although, to be sure, it was said in the Seider case that “ as soon as the accident occurred there was imposed * * * a contractual obligation which should be considered a ‘ debt ’ within the meaning of CPLR 5201 and 6202. ” (17 N Y 2d, p. 113.) As to future rents, there is no present duty.
Although New York has never specifically held that future rents cannot be attached or garnished, most other jurisdictions have held that future rents are so speculative as not to qualify as debts certain to be due, or even as debts at all, and hence are not garnishable (see United States Fid. & Guar. Co. v. Wrenn, 89 F. 2d 838; Calechman v. Great Atlantic Pacific Tea Co., 120 Conn. 265, and cases cited in Ann.— Garnishment of Tenant, 100 A. L. R 307).
But, as noted, the New York rule in the general area fits the prevailing view, and such legislative history dealing with CPLR 6202 and 5201 (subd. [a]) as is available suggests that there was no intention to modify the generally accepted criteria for what is a debt certain. This is not surprising. Where the real property is located in the same State as the forum, the levying creditor has no problem. He levies against the real property in this State simply by filing a notice of levy in the appropriate county clerk’s office (CPLR 6216; 7A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6216.01 et seq.). It then becomes a lien against the real property and the owner is effectively restrained from disposing of the property without first discharging the *360 lien. If it is necessary to reach, the accruing rents, a simple form of receivership is available after judgment (CPLB 5228, subd. [a]; 6 Weinstein-Korn-Miller, op. cit., par. 5228.01 et seq.). Consequently, there has been little or no practical necessity for a direct levy on future rents under the attachment and execution statutes. The exceptional situation which has arisen here is that, first, defendants are nondomiciliaries, second, the real property is outside the State, and, third, the rent-paying tenant is subject to jurisdiction.
The exceptional situation raises another conceptual question. Under traditional, even ancient law, rents were not personal obligations but rights and duties (however treated) associated with or “ emanating from ” the land (see Bouvier’s Law Dictionary [Bawle’s 3d rev.], “ Bent ”). On this view, the rents would be attachable only in the jurisdiction in which the land lay. It is hardly necessary to reach this issue in this case, if one accepts the view that the legislation on attachment and exécution never purported to reach future rents, except as income, subject perhaps only to execution (compare CPLB 6202 with CPLB 5201 and 5231).
The broker indeed argues that the limiting language of CPLB 5201 must be read in connection with CPLB 5231, providing for execution against 10% of recurring income (3rd Preliminary Beport of Advisory Committee on Practice & Procedure [N". Y. Legis. Doc., 1959, Mo. 17], p. 101). It need not be decided whether the income execution provision is available as a basis for attachment, or whether future rents are covered by that provision. Income executions under CPLB 5231 (subds. [b], |cj) must first be served upon the judgment debtor, who must be given an initial opportunity to make the required payments of 10% of the income against which the judgment is enforced. Only if he defaults may a third party, the source of the income, be served. The protection thus afforded the judgment debtor should not be abandoned if the income execution provision were to be deemed applicable to attachment. Attachment, therefore, even if otherwise authorized, was not properly levied in this case. The order of attachment was issued December 20, 1965, and the levy was attempted December 21,1965. No attempt was made to notify the owners of the attachment or give them opportunity id avoid, the levy on the lessee until after it had already been made.
*361 Consequently, the levy was ineffective and quasi in rem jurisdiction was not obtained.
II. In personam jurisdiction
The broker also contends that, even if the attachment is invalid, in personam jurisdiction over the owners has been obtained (under OCA, § 404, subd. [a]) in that the owners transacted business witbin the City of New York (cf. CPLR 302, subd- [aj, par. 1).
If conflicting allegations are resolved in plaintiff broker’s favor, the record reveals the following facts:
The defendants, Donald, Bichard, and Josephine Hyder, residents of Albuquerque, New Mexico, owned a parcel of land and office building in Albuquerque, which they rented under a 20-year net lease to the Fireman’s Fund Insurance Company, a corporation doing business and maintaining an office in New York Oity.
On October 22,1965 plaintiff Classman, from New York, telephoned Donald Hyder in New Mexico and ascertained the property’s ownership and Hyder’s power to act for his brother and mother, the other co-owners, in hiring a. broker and negotiating a sale. Plaintiff Classman indicated to Hyder that he had a purchaser at $240,000, all cash, free and clear. This was rejected, Hyder saying that the owners wanted $250,000. Hyder also said the sellers would pay only a 5% commission, and that half of that would have to be paid to Hyder’s own real estate brokerage business. Classman said that if these were the only terms by which a deal was possible, he would accept. During that telephone conversation, Hyder offered Classman a brokerage- contract, and Classman accepted.
On October 25, Classman again telephoned Hyder and informed him that a prospective purchaser was willing to pay $250,000. A copy of the existing lease with Fireman’s Fund was also mailed to broker on October 25. Pursuant to Hyder’s request, the offer to purchase was confirmed by the broker’s telegram the same day. Hyder replied by letter, enclosing a proposed contract and fixing a commission of 5%, half of which was to go to Donald Hyder, also a broker, as his share of the brokerage fee.
*362 Glassman spoke to Hyder by telephone on October 26. At this time Hyder agreed to accept the offer of Glassman’s client. Glassman indicated that a formal contract of sale would be signed as soon as a copy of the existing lease was received. On October 27, a letter from Hyder and a copy of the lease was received by Glassman.
The formal contract of sale was never signed by all the parties, and negotiations continued until early December. On November 15, purchaser’s attorney mailed Hyder a contract signed by the purchaser and a check for $10,000. These were returned by Hyder under date of November 23, along with a new proposed contract containing minor changes. The purchaser’s attorney sent Hyder, on December 6, copies of the proposed contract revised and signed by the purchaser, and a $10,000 check in partial payment. By a telegram of December 8, Hyder said he was unable to accept purchaser’s “offer” before December 10 due to an unexpired option held by another party. On December 10, Hyder returned to purchaser’s attorney the agreements and the $10,000 check. By letter dated December 13, Hyder informed Glassman that a local buyer had submitted a higher offer and that it had been accepted. The summons in this action was served on Hyder on January 3, 1966.
In determining whether the owners’ activities constitute the transaction of business in New York, the court should weigh not only the owners’ correspondence with the broker, but must also consider the owners’ negotiations with the prospective purchaser. The two sets of negotiations are so closely related as to justify viewing them as a single entity. The acts of the independent broker within New York should not, however, be attributed to the owners so as to become acts of the owners in New York (see Millner Co. v. Noudar, Lda., 24 A D 2d 326).
Upon viewing the owners’ activities in relation to New York in their entirety, it is concluded that there was no transaction of business in New York. The brokerage contract was brought about through the initiative of the broker, who telephoned New Mexico and proffered his services. While the owners corresponded with both the broker and the prospective buyer, this correspondence failed to elaborate or even reduce to writing the oral brokerage commitment sued upon.
*363 TMs court has previously held that there is no transaction of business in New York where an offer placed outside the State by telephone is received and accepted in New York (Katz & Son Billiard Prods. v. Correale & Sons, 26 A D 2d 52, 53, affd. 20 N Y 2d 903), or where a contract is negotiated in New York by defendant’s independent contractor, sent to Great Britain, there signed by defendant, and then returned to New York for the final signature of the plaintiff (Standard Wine & Liq. Co. v. Bombay Spirits Co., 20 N Y 2d 13,16-17, affg. 25 A D 2d 236, 237). Moreover, even where questions regarding the nature of an oral contract are resolved by mail between New York and another State, and employees of the out-of-State defendant manufacturer briefly visit New York in connection with sales to third parties under the distributor’s contract, no transaction of business in New York is found (McKee Elec. Co. v. Rauland-Borg Corp., 20 N Y 2d 377, 380, 382).
Since there is neither quasi in rem nor in personam jurisdiction the complaint was properly dismissed.*
Accordingly, the order of the Appellate Division vacating the attachment and dismissing the complaint should be affirmed, without costs.

 Because of the conclusions reached, it is not necessary to consider the further questions whether the New Mexico real estate brokerage law, requiring a written memorandum of hire, and restricting actions for commissions to New Mexico brokers, applies to the instant brokerage agreement (cf. Anderson v. A/S Berge Signal Bergesen, 22 N Y 2d 944, affg. 29 A D 2d 756), or whether proof of New Mexico service was untimely filed in New York, as contended by defendants.