RICHARD DAVIS, d/b/a DAVIS & Co., Plaintiff and Counterdefendant-Appellee, *v.* SOL NEHF, Defendant and Counterplaintiff-Appellant.

(No. 57744;

First District (1st Division)—August 20, 1973.

Haft, Shapiro & Haft, of Chicago, (Morris A. Haft, of counsel,) for appellant.

Teller, Levit & Silvertrust, of Chicago, (Leo Feldman, of counsel,) for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, a liccnsed New York real estate broker, sued the defendant in New York fcr the payment of an alleged brokerage commission. The defendant was served with summons in Chicago, Illinois, pursuant to section 302 of the Civil Practice Laws and Rules of the State of New York. (7B McKinney's CPLR, sec. 302, 1972.) The defendant filed no appearance in New York, and judgment was entered in favor of the plaintiff. The plaintiff then filed a petition to register that judgment in the circuit court of Cook County. The defendant answered that the New York judgment was void for lack of jurisdiction and counterclaimed that he had relied on false representations of the plaintiff and suffered damages for lost rentals and costs of improvements. The plaintiff then filed Count II of the complaint, which is virtually identical with the complaint filed in New York. The trial judge denied the defendant's motion for summary judgment; granted summary judgment for the plaintiff on the petition to register the foreign judgment; and dismissed the counterclaim. The defendant appeals from all three orders.

In addition to the pleadings, the record consists of the affidavits of the plaintiff and the defendant. The defendant, Sol Nehf, under the terms of a 99-year lease, is the owner of a leasehold improved with a 16-story commercial and office building located at 173 West Madison Street, Chicago, Illinois, known as the Madison-LaSalle Building. The defendant is, and at all times was, a resident of Chicago and maintains his sole office and place of business at 173 West Madison. He never had a place of business in New York and had not been in New York for over five years. The plaintiff, Richard Davis, was engaged in the business of a real estate broker and has been licensed by the State of New York since 1966. His business is located in New York, and he represented clients on a commission basis. The only contact that the parties had with each other was by telephone and mail correspondence dealing with the rental of space in the building at 173 West Madison in Chicago.

On or about November 22, 1966, the plaintiff from New York contacted the defendant in Chicago by telephone and advised the defendant that he had a prospective tenant who wanted to rent office space in the defendant's building and asked if any space was available. The defendant told him that there was, and the plaintiff submitted as a prospective tenant the name of Programming & Systems, Inc., a corporation which had decided to open various franchises and subsidiaries throughout the United States. According to the defendant, the plaintiff told the defen-

dant that the prospective tenant had a very good credit rating, was financially sound and fully capable of carrying out any commitment made by way of a lease. The plaintiff denied making a representation of the financial condition of the tenant.

Thereafter, considerable correspondence took place between the two parties; the plaintiff telephoned the defendant from New York, and the defendant telephoned the plaintiff from Chicago concerning what progress was being made in the renting of the building space. The plaintiff in New York was asked by the defendant by telephone to complete arrangements with Programming & Systems, Inc. for the leasing of office space. The parties entered into an agreement under which the plaintiff was to be the defendant's broker for the leasing of the building space and compensated at the prevailing brokerage rate.

The plaintiff entered into negotiations, all of which took place in New York, with Programming & Systems, Inc. These negotiations occurred during a period of several weeks and the plaintiff incurred expenses for which he was to be compensated by the defendant.

On December 2, 1966, the defendant advised the plaintiff that he had met with the principals of the prospective tenant in Chicago and that they were discussing a six-year lease. The prospective tenant requested the defendant to improve the premises for its own particular use. The defendant hesitated because there was no signed lease; the plaintiff, however, then asserted that the prospective tenant would enter into the lease and that it was safe to proceed with the alterations and remodeling, which the defendant did.

On January 4, 1967, the defendant prepared a lease wherein Programming & Systems, Inc. was the tenant and forwarded it to New York. Two or three days later the defendant received a call from the plaintiff, who told him that Programming & Systems, Inc. would not be the tenant for the premises but that another corporation, Programming & Systems Institute of Chicago, Inc., a subsidiary of the corporation originally proposed as a tenant, would be the lessee. The plaintiff told the defendant that Programming & Systems Institute of Chicago, Inc. was a financially sound corporation and would be able to carry out any commitment.

A lease was executed by Programming & Systems Institute of Chicago, Inc., as lessee, and the defendant as lessor, for the period of February 15, 1967, through February 15, 1973, at a total rental of $78,280.00 payable at $970.00 per month for the first 12 months and thereafter at $1110.67 per month for 60 months. The first rental payment was made on May 5, 1967, when the premises were completed. The tenant paid

rentals for the months of June and July of 1967 but failed to pay rent for the months of August through December. The defendant then executed a new lease with Programming & Systems Institute of Chicago, Inc. for the period of January 1, 1968, through December 31, 1968, at a total rental of $11,640.00 payable in 12 equal monthly installments of $970.00. This one-year lease was fully performed. In January of 1969, the defendant executed another lease, which is presently in effect, with the same tenant for the period commencing January 1, 1969, and expiring December 31, 1975. This lease was for a total rental of $89,920.20 payable in 24 consecutive monthly installments of $970.00 and thereafter in 60 monthly installments of $1110.67.

On January 20, 1967, the plaintiff billed the defendant $2221.80 for his services based on the standard real estate brokerage rates then prevailing. The defendant paid $500.00 but refused to pay the balance of the fee.

■■ The plaintiff contends that the defendant's motion for summary judgment was properly denied since the supporting affidavit was improper in that it sets out matters to which the affiant could not testify. (Ill. Rev. Stat. 1971, ch. 110A, sec. 191.) The record reveals that plaintiff's motion to strike the affidavit was not considered nor ruled upon by the trial court in relation to its legal sufficiency. Since it is the duty of the movant to bring such motions to the attention of the trial court and to preserve any rulings thereon, the failure to do so waives any objection. (*Jones v. Lukas*, 122 Ill.App.2d 162, 164, 258 N.E.2d 147.) In any event, we have considered the affidavit and hold that it sufficiently complies with Supreme Court Rule 191.

■■ The plaintiff first argues that, since the defendant did not challenge the jurisdiction of the New York court, Illinois courts are bound under the full faith and credit clause of the Federal Constitution to enforce the judgment. We must, of course, reject this argument. The courts of Illinois may inquire into the proceedings of a court of a sister state to determine whether such court had jurisdiction of the subject matter or the parties so as to bring the judgment within the full faith and credit clause. (ILP Judgments, sec. 554; *Faris v. Faris*, 35 Ill.2d 305, 220 N.E.2d 210; *People v. Western Tire Auto Stores, Inc.*, 32 Ill.2d 527, 207 N.E.2d 474.) The Uniform Foreign Money-Judgments Recognition Act (Ill. Rev. Stat. 1971, ch. 77, sec. 121, *et seq.*) provides in section 123 that a "foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit"; but section 124(a) (2) provides that a foreign judgment is not conclusive if the foreign court did not have personal jurisdiction over the defendant.

*Kolman v. National Racing Affiliates, Inc.*, 64 Ill.App.2d 61, 64, 212 N.E.2d 313, involved, as here, a suit in Illinois based on a foreign judgment. The court said:

> "Under well-established rules for according full faith and credit to the judgments of sister states, the forum court may not rehear the case on its merits as it is res judicata as to the nature and amount of the plaintiff's claim and all defenses raised or which could have been presented. [Citation.] A foreign judgment has no constitutional claim to full faith and credit, however, where the error complained of to the forum court is one which would (1) render the judgment void according to the law of the foreign state, or (2) deprive the foreign court of jurisdiction over the contesting party according to general constitutional principles of due process."

■■ The question is whether New York had *in personam* jurisdiction over the defendant. In 1945, the United States Supreme Court decided *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 316, 90 L.Ed. 95, holding: "* * * [D]ue process requires only that in order to subject the defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Subsequent to the *International Shoe* case, a number of states passed so-called "long-arm" statutes dealing with the problem of jurisdiction over non-residents. Section 302 of the Civil Practice Laws and Rules of New York, which is modeled upon the Illinois Statute, ch. 110, sec. 17, provides in part:

> "(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state; * * *"

The question then becomes whether or not the evidence shows the "minimum contacts" within the meaning of *International Shoe*. In *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, "minimum contact" was characterized as "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Although the plaintiff argues that we have no right to review the actions of the New York court at all, judging from his brief, he apparently agrees with the defendant's position that we are to determine whether there has been "minimum contact" in the light of New York precedent.

A case strikingly similar on its facts to this case is *Glassman v. Hyder,* 23 N.Y.2d 354, 296 N.Y.S.2d 783. The defendants were residents of and owned an office building in New Mexico. The plaintiff, a real estate broker in New York, telephoned one of the defendants in New Mexico and told him that he had a buyer for the New Mexico property. The owner offered a brokerage contract and the plaintiff accepted. There followed other telephone conversations and correspondence by mail and telegraph. The Court of Appeals, in upholding the reversal of a judgment for the broker, held that "there is no transaction of business [within the meaning of section 302] where an offer placed outside the State by telephone is received and accepted in New York * * *."

In *Electronic Devices, Inc. v. Mark Rogers Associates,* 63 Misc. 2d 243, 311 N.Y.S.2d 413, the defendant, who conducted a personnel placement agency in Connecticut, solicited the plaintiff in New York by telephone from Connecticut and arranged to supply a prospective employee. The plaintiff paid a fee and sued to recover it. The Appellate Division held there was "no transaction of business in [New York] which would subject defendant to long-arm jurisdiction."

In *M. Katz & Son Billiard Products, Inc. v. G. Correale & Sons, Inc.,* 26 App.Div.2d 52, 270 N.Y.S.2d 672; *aff'd,* 20 N.Y.2d 903, 285 N.Y.S.2d 871, the plaintiff, a New York corporation, and the defendant, a New Jersey corporation, had engaged in business transactions for 30 years. In accordance with their practice, the defendant's president placed a telephone order for certain goods, and the plaintiff shipped them to New Jersey. The Appellate Division (later affirmed by the Court of Appeals) held that the contacts with New York did not constitute "purposeful acts" sufficient to sustain jurisdiction.

We conclude, therefore, based on New York precedent that the plaintiff has failed to establish the "purposeful act" or "minimum contact" sufficient to sustain jurisdiction in the state of New York. See also *McKee Electric Co. v. Rauland-Borg, Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34; *Standard Wine & Liquor Co. v. Bombay Spirits Co.,* 20 N.Y.2d 13, 281 N.Y.S.2d 299.

The plaintiff's reliance on *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, is misplaced. That case did not, contrary to the plaintiff's argument, expand the doctrine enunciated in *International Shoe.* The defendant was an insurance company doing business in general in California. The California court based its jurisdiction on its statute which subjects foreign corporations to suit in California on insurance contracts with residents of that state. (Illinois has a similar provision: ch. 110, sec. 17(1) (d).) The United States Supreme Court held that the statute was remedial and, although passed after the insur-

ance contract in question was made, did not require only prospective application.

The plaintiff next contends that he was the agent of the defendant and, therefore, the defendant was transacting business within the state when the plaintiff negotiated with the prospective tenant. In support of that argument he cites *Hodom v. Stearns,* 32 A.D.2d 234, 301 N.Y.S.2d 146; *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 208 N.Y.S.2d 337; and *John DeNigris Associates, Inc. v. Pacific Air Transport International, Inc.,* 38 A.D.2d 363, 329 N.Y.S.2d 939. In *Hodom,* the contract between the parties established that the defendant retained "such domination and control over [the plaintiff's] activities as to effectively prevent him from being an independent licensee or contractor." The *DeNigris* case involved a written employment agreement between the plaintiff and the defendant. In *Parke-Bernet,* the defendant was a resident of California who wished to purchase certain paintings that were to be auctioned off by the plaintiff in New York. On the day before the auction the defendant called the plaintiff and requested that telephonic communication be established between them during the course of the bidding so that he might keep abreast of and take part in the bidding while the auction was actually going on. An open telephone line was set up on the evening of the auction between the defendant in Los Angeles and an employee of the plaintiff. During the entire course of the auction, the employee informed the defendant in California of the bids that were being made; the defendant in turn gave the employee his bids, and the employee relayed the defendant's bids to the auctioneer, who announced them to the other bidders in the auction room. The Court of Appeals held that the defendant's active participation in the bidding amounted to the sustained and substantial transaction of business there and pointed out that the business he was transacting affected not only the plaintiff but all those who were in the auction room. The court further held that the employee of the auctioneer had been loaned to the defendant for the duration of the sale and at that time became the employee of the defendant. The court distinguished *Glassman v. Hyder,* 23 N.Y.2d 354, 296 N.Y.S.2d 783, and other cases by pointing out that in none of those cases had the defendant himself engaged in purposeful activity within the state. In this case there is no employment agreement, nor a contractual domination and control preventing the plaintiff from being an independent contractor nor did the defendant himself engage in purposeful activity within the state.

■■ The defendant argues that where an agent and not the third party sues the principal, the agent's act will confer jurisdiction over the principal only if the agency was an exclusive one. (See *Hertz, Newmark &*

*Warner v. Fischman,* 53 Misc.2d 418, 279 N.Y.S.2d 97, 99.) In *A. Millner Co. v. Noudar, LDA.,* 24 App.Div.2d 326, 266 N.Y.S.2d 289, 293, the Appellate Division said:

> "If the plaintiff were an employee of or an *agent acting exclusively* for the defendant, plaintiff's acts, in and of themselves, performed for the defendant in New York would suffice to establish jurisdiction of the action against the defendant. [Citations.] But it is asserted and not denied that the plaintiff is an independent broker representing many different companies on a commission basis, in no way under the defendant's control. In such circumstances the acts of the broker representative, the plaintiff herein, are not the acts of the so-called principal, and do not create a basis for jurisdiction against this defendant." (Emphasis added.)

We conclude from this record that the plaintiff was not the exclusive agent of the defendant but an independent contractor and that the plaintiff's acts did not suffice to establish jurisdiction of the New York court over the defendant.

The defendant has also appealed from the order striking his counterclaim, which alleges that the plaintiff made statements to the defendant that "it was safe to proceed with the alterations and remodeling of the space requested by" the tenant; "that the statements so made by the plaintiff were intended to be relied on" by the defendant; that the plaintiff told the defendant that the tenant was a "financially sound corporation and would be able to carry out any commitment"; that the "representations were known to the plaintiff to be false and the planitff should have known" that the statements were false; and "that the plaintiff knew or should have known that the financial position" of the tenant "was not good."

In order to establish fraud it must be alleged and proved that the statement made was of a material fact and not opinion; it must be untrue; the party making the statement must know or believe it to be untrue; the person to whom the statement is made must believe and rely on it, and have a right to do so; it must have been made for the purpose of inducing the other party to act; and the reliance by the person to whom the statement is made must lead to his injury. *Broberg v. Mann,* 66 Ill. App.2d 134, 213 N.E.2d 89.

■■ The order striking the counterclaim must be affirmed for a number of reasons, but we need address ourselves to only one. It is not sufficient to allege that the party making the representation knew or should have known it to be false. (*Rowe v. Phillips,* 214 Ill.App. 582, 588.) While in one part of the counterclaim it is alleged that the plaintiff knew *and* should have known the representation to be false, (which is equivocal

enough) in another part, it is alleged that the plaintiff knew *or* should have known. Fraud must be pleaded with specificity, particularity and certainty (*In re Estate of Hansen*, 109 Ill.App.2d 283, 248 N.E.2d 709), and must apprise the opposite party of what he is called upon to answer. (*Karnatz v. Karnatz*, 337 Ill.App. 660, 86 N.E.2d 397.) In our view, the equivocal allegations of the counterclaim do not meet those standards. Any reasonable person responding to this counterclaim would not know whether he was charged with actual knowledge or negligence in not ascertaining the truth.

For the foregoing reasons the order granting summary judgment in favor of the plaintiff and against the defendant is reversed; the order denying summary judgment in favor of the defendant is reversed and the cause is remanded with instructions to enter summary judgment in favor of the defendant on Count I and to proceed on Count II in a manner not inconsistent with this opinion; the order striking the counterclaim is affirmed.

Judgments reversed in part, affirmed in part and cause remanded with directions.

BURKE, P. J., and HALLETT, J., concur.