MASONITE CORPORATION, Plaintiff,

v.

HELLENIC LINES, LIMITED, Defendant and Third-Party Plaintiff,

v.

PALM LINE LIMITED and M/V AKASSA PALM, her engines, boilers, etc., Third-Party Defendant.

No. 74 Civ. 5452.

United States District Court, S. D. New York.

Jan. 5, 1976.

Burlingham, Underwood & Lord, New York City, for third-party plaintiff.

Kirlin, Campbell & Keating, New York City, for third-party defendant by John B. Conway, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

■ This is a motion to dismiss a third party action for lack of personal jurisdiction and for insufficiency of service of process, Rule 12(b)(2) and (5), Fed.R.Civ.P.[1] Hellenic Lines Limited ("Hellenic") is a defendant in an action to recover for damage to cargo brought under the admiralty and maritime jurisdiction of this Court. See Rule 9(h), Fed.R.Civ.P. Hellenic, in turn, seeks to hold Palm Line Limited ("Palm Line"), the third party defendant and owner of the vessel on which the goods were shipped, liable on an indemnity theory. Palm Line has moved to dismiss.

Palm Line is a corporation organized and existing under the laws of the United Kingdom of Great Britain and Northern Ireland with offices in London, England. It is a shipper between ports of England and those of Europe and Africa. Palm Line does not

have regular service to the United States. On occasion, it charters its ships to others who operate the vessels under a time charter agreement. Palm Line does not have any agents or offices in New York or any other jurisdiction within the United States and is not licensed to do business in New York.

On April 6, 1972, Palm Line executed a standard Time Charter agreement in London with Transpacific Carriers Corporation ("Transpacific"), a Panamanian corporation. Transpacific chartered the AKASSA PALM for a round voyage via South Africa, Red Sea, Persian Gulf, Pakistan, India and/or Bangladesh. The Charter provided that any dispute between Palm Line and Transpacific was to be submitted to arbitration in New York and that the vessel's hire was to be paid to a named New York bank for the credit of Palm Line's London bank.

Pursuant to an operating and managing agreement with Transpacific, the vessel was made available to Hellenic. Although Hellenic has not submitted its agreement with Transpacific to this Court, Hellenic's relationship with Palm Line has been described as one of "charterer *pro hac vice*," "subcharterer," and "agents for: Transpacific." Regardless of the label employed, two facts are clear: first, that Hellenic was not in any way a party to the Time Charter with Palm Line and, second, that Palm Line and Hellenic accepted each other's performance under the Time Charter.

On April 15, 1972, Hellenic issued operating instructions from its New York office to the Master of the AKASSA PALM, an em-

---

1. In 1966 the general Federal Rules of Civil Procedure and the Admiralty Rules of 1920 were unified. Rule 1, Fed.R.Civ.P. now reads in part:
   "These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity *or in admiralty,* with the exceptions in Rule 81 [prize proceedings, Harbor Workers' Compensation Act]." (emphasis added).
   The Supplemental Rules for Certain Admiralty and Maritime Claims apply only to (1) Mari-

time attachment and garnishment; (2) Actions in rem; (3) Possessory, petitory, and partition actions; and (4) Actions for exoneration from or limitation of liability. Even in these cases, the general Rules of Civil Procedure apply where not inconsistent. Supp. Admiralty and Maritime Rule A.
   The present case is a maritime tort action in which the third party defendant alleges lack of personal jurisdiction. Thus, the Federal Rules of Civil Procedure control.

ployee of Palm Line, who was then in port in New Orleans. The ship arrived in New York on May 1, 1972 for a four day call during which it was berthed at Hellenic's 57th Street Terminal. Hellenic performed certain husbanding functions for Palm Line, including securing water and dunnage for the vessel. In New York, the Master of the vessel contracted with Hellenic to paint Hellenic's name on the ship's side for the sum of $100.

Thereafter, the AKASSA PALM departed for South Africa. During a July 28, 1972 stopover in Durban, South Africa, Timberit Woodboard Limited delivered to the vessel a shipment of hardboard, the subject matter of this action, for transportation to Baltimore, Maryland. The shipment was made under a Bill of Lading issued by Hellenic under general authorization by the ship's Master. The AKASSA PALM returned to New York for a six day call before arriving in Baltimore on August 30, 1972. The vessel was redelivered to Palm Line in New Orleans on September 16, 1972. From April to September, the ship made 21 calls in 16 ports.

Masonite Corporation, as consignee and owner of the damaged shipments, commenced an action against Hellenic. Hellenic in turn has commenced this third party claim against Palm Line for indemnity. The summons and complaint were served by registered mail on the third party defend-

ant in London as authorized by Rule 4(i)(1)(D), Fed.R.Civ.P.[2]

Palm Lines moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. It also moves to dismiss under Rule 12(b)(5) for insufficiency of service of process. Palm Line concedes that the motion under Rule 12(b)(5) stands or falls on whether there existed a valid basis for personal jurisdiction.

■ The Federal Rules of Civil Procedure incorporate state law basis of personal jurisdiction for original federal causes of action, Rule 4(d)(7)[3] and (e).[4] See *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). See also Notes of Advisory Committee on Civil Rules (1963).

■ To begin with, it is the burden of Hellenic to establish a basis for personal jurisdiction over Palm Line, see *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936). The opposing papers of Hellenic appear to meld three distinct jurisdictional standards. First, Hellenic relies on cases such as *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *McGee v. International Life Insur. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) as a basis for jurisdic-

2. The Rule provides:
"When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made:
* * * * * *
(D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served . . .."

3. Rule 4(d)(7) states that:
"The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(7) Upon a defendant of any class referred to in paragraph (1) or (3) [corporations] of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

4. Rule 4(e) provides in part:
"Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule."

tion. These cases set the outermost reach of a state's extraterritorial jurisdiction under federal constitutional standard. They certainly do not impose a minimum. Rule 4(e) authorizes this Court to exercise jurisdiction over non-domiciliaries where New York has in fact provided a basis for jurisdiction. Apparently, New York has not chosen to extend its jurisdiction to its fullest limits. See, *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); *Lavie v. Marketscope Research Co., Inc.*, 71 Misc.2d 373, 336 N.Y.S.2d 97 (App.Term, 1st Dept. 1972).

■ Turning to New York law, Hellenic suggests that the third party defendant is subject to jurisdiction under the so-called "doing business" test or corporate presence doctrine. CPLR 301. Under that standard a foreign corporation is considered present within the state if it does local business "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917). If the test is met, then the corporation is subject to jurisdiction regardless of whether the cause of action arises from the New York business.

■ In the instant case, few of the classic indicia of presence have been demonstrated. Palm Line has no office and no employees within the state. It solicits no business and does not conduct any regular service to or from New York whether by business representative or subsidiary. Although Palm Line does maintain a New york bank account, the monies are immediately credited to its London bank. See *Weinberg v. Colonial Williamsburg, Inc.*, 215 F.Supp. 633, 639–40 (E.D.N.Y.1963). In sum, under the "simple pragmatic" test suggested by *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965), Palm Line does not conduct sufficient activities in New York to be considered "present".

The final justification for jurisdiction posed by Hellenic is the New York "long arm" statute, CPLR 302. Specifically, it urges that the cause of action arises out of the transaction of business within the state. CPLR 302(a)(1) provides that:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state . . . .."

In analyzing Palm Line's contacts within the state, the admonition of the New York Court of Appeals must be kept in mind:

"In our enthusiasm to implement the reach of the long-arm statute (CPLR 302), we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial general business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact . . . .."

*McKee Electric Company, Inc. v. Rauland-Borg Corporation*, 20 N.Y.2d 377, 383, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967).

■ Hellenic points to the letter of general instructions from its New York office to the Master of the vessel as a possible transaction of business within the state. However, Hellenic's own opposing papers indicate that the letter was delivered by Hellenic to the Master while in New Orleans. (Hennessy affidavit at ¶ 9). Similarly, an authorization to sign bills of lading executed by the Master outside the state but sent to Hellenic's New York office is hardly a transaction of business by Palm Line within the state. The same may be said of the payments by Hellenic to Palm Line's bank account. The maintenance of the account was a transaction of business within the state by Palm Line but the cause of action did not arise out of it. On the other hand, the deposits were the acts of Hellenic. These payments were not made pursuant to any contract between Hellenic and Palm Line. The New York Court of

Appeals has rejected attempts by agents to "bootstrap" themselves into establishing jurisdiction over their principals by pointing to their own acts within the state as a basis for jurisdiction. See *Glassman v. Hyder*, 23 N.Y.2d 354, 362, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968); *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973).

The May, 1972 call of the AKAS-SA PALM to New York harbor offers no possible assistance to the third party plaintiff. While the performance of certain husbanding services for Palm Line, as well as the contract to paint Hellenic's name on the vessel, might be construed as transactions by Palm Line, it is clear beyond a doubt that the cause of action did not arise from them. In fact, the cargo in question had not yet been loaded.

As to the August, 1972 call the only possible nexus with the underlying cause of action is that the cargo which is the subject of the suit rested on board the vessel.[5] There is no allegation that any part of the damage occurred while the vessel was in New York. The Court of Appeals for this Circuit has noted that there are few guidelines under New York law in determining when a cause of action "arises from" the transaction of business within the state. *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970). One respected authority has suggested that the cause of action must be directly and proximately related to the New York transaction. McLaughlin, Practice Commentary to CPLR 302 at 63 (McKinney's 1972). Regardless of the standard used and viewing the matter most favorably to the third party plaintiff, I find that neither the damage to the cargo nor the right to indemnity

arose directly or indirectly from the supposed New York transactions of Palm Line.

Hellenic has failed to establish a valid basis for personal jurisdiction over Palm Line. Accordingly, the motion to dismiss under Rule 12(b)(2) and (5), Fed.R.Civ.P. is granted.

SO ORDERED.

---

5. There are additional reasons why I am reluctant to base jurisdiction on such a slim contact. Both New York calls were made at the sole direction of and for the sole benefit of Hellenic. Thus, the argument could be made that the calls were not a purposeful act of Palm Line. This, of course, would raise a constitutional issue under *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1297 (1958). Furthermore, since the calls were directed by Hellenic it may present the same "bootstrap" problems under CPLR 302(a)(1) that other New York activities of Hellenic have presented. See *Glassman v. Hyder*, 23 N.Y.2d 354, 362, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968); *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973).