**SAYLES BILTMORE BLEACHERIES, INC., Plaintiff,**

v.

**SOFT–FAB TEXTILE PROCESSORS, INC., Defendant.**

**No. 77 Civ. 4501.**

United States District Court, S. D. New York.

Nov. 28, 1977.

Austrian, Lance & Stewart, P. C., New York City, for plaintiff; Sandra Gale Behrle, Washington, D. C., of counsel.

Ralph J. Schwarz, Jr., New York City, for defendant.

LASKER, District Judge.

Sayles Biltmore Bleacheries, Inc. ("SBBI") sues Soft-Fab Textile Processors, Inc. ("Soft-Fab") for the value of services rendered. SBBI, which is a New York corporation with a finishing plant in Asheville, North Carolina, claims never to have been paid for the fabric processing work that it performed for Soft-Fab, a Missouri corporation with offices in St. Louis and Greensboro, North Carolina. Soft-Fab moves to dismiss on the ground that there is no personal jurisdiction over the defendant. Rule 12, Federal Rules of Civil Procedure. The

motion is granted for the reasons set forth below.

Business relations between the parties were initiated in early October, 1976, when Soft-Fab's president, Michael Novoson, wrote to the president of SBBI, Sheffield Novik. (The introductory letter, dated October 11, 1976, was addressed to SBBI's North Carolina offices; see, Ex. D, Novik Affidavit) Novoson expressed his interest in working out a contract with SBBI under which SBBI would process fabrics on Soft-Fab's behalf. Negotiations followed, and continued through December, 1976. The negotiation meetings were held either at SBBI's Asheville processing facilities or in St. Louis. (¶¶ 24–30, Novoson Affidavit; ¶¶ 13, 15, 16, Novik Affidavit) None of the preliminary conferences took place in New York.

Whether or not these discussions produced an express contract—a mixed question of law and fact that need not be decided—they did lay the foundation for a course of dealing in which SBBI processed Soft-Fab's materials on a lot-by-lot basis (¶¶ 14, 17, 20, Novik Affidavit). Fabric was sent from mills in North Carolina (¶ 16, Novoson Affidavit) to the Asheville plant, where it was subjected to a finishing treatment specified in accompanying processing orders (Ex. B, Novik Affidavit; Ex. D, Novoson Affidavit). These orders contained all the specifications for each processing transaction except for the price term. That term was provided by SBBI, and though it appears that the price for each lot was governed by a master price schedule, (¶ 18, Novoson Affidavit; ¶¶ 26, 27, Novoson Reply Affidavit) plaintiff claims that an independent price determination was made for each lot. Finished goods were shipped to Soft-Fab's customers, and, except for three shipments of samples, were sent to locations other than New York (¶ 30, Novoson Affidavit; ¶ 17, Novoson Reply Affidavit).

Against what loudly proclaims itself to be a series of perfectly foreign transactions, plaintiff offers several "contacts," which it believes constitute "transaction of busi-

ness," sufficient under C.P.L.R. § 302(a)(1) to subject the defendant to New York's jurisdiction.

■ First, SBBI contends that Soft-Fab's decision to do business with a New York corporation itself amounted to a submission to our jurisdiction. As SBBI puts it:

"defendant Soft-Fab Textile Processors, Inc. ('Soft-Fab') knew immediately after it contacted plaintiff, Sayles Biltmore Bleacheries, Inc. ('SBBI') that it would be dealing with a New York company. It accepted the fact that negotiations and decision-making would center around the corporate headquarters and office of the president of the company in New York and knew that there was no way the companies could continue to deal with each without the domination and control of the New York office. With this knowledge it elected to go ahead and deal with SBBI, a New York corporation, and with its president located in New York. It cannot now say it never availed itself of the privileges and protection of New York and therefore is not subject to jurisdiction here." (Plaintiff's Memorandum at 2)

Inherent in this apparent *non sequitur* is the proposition that the choice to do business with SBBI amounted to the appointment of an agent and, through the acts of this agent, Soft-Fab acquiesced to New York's jurisdiction. The short answer to this construction of the law is that it is wrong. Furthermore, in a suit in New York by an agent against his principal, the former's activities in New York cannot, for jurisdictional purposes, be attributed to the latter. *Haar v. Armendaris Corporation*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), reversing 40 A.D.2d 769, 337 N.Y.S.2d 285 (1st Dept. 1972); *accord, Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.*, 411 F.Supp. 1021 (S.D.N.Y. 1976). Without the agency theory, the fact that New York was the center of *plaintiff's* activities is irrelevant to the outcome under C.P.L.R. § 302(a)(1), which depends on the

connection that *defendant* has with this jurisdiction. *Galgay v. Bulletin Company, Inc.*, 504 F.2d 1062, 1065 (2d Cir. 1974).

■ In its attempt to establish jurisdiction, SBBI emphasizes that carbon copies of correspondence (concerning the contract negotiations) that was addressed to Asheville were forwarded to New York and that telephone calls were placed from St. Louis to New York. Although we are impressed with the sincerity with which the argument is made, the notion that mailing copies of letters from out of state to New York amounts to "transaction of business," in this case or any other, is altogether unfounded. First, since plaintiff firmly claims that no contract was ever formed (¶ 19, Novik Affidavit), no cause of action could have "arisen from" the correspondence related to the attempted contract. Second, even where successful contract negotiations have been conducted by mail and originals, rather than copies, have been sent here, the transmission has been held not to be a transaction of business. *Glassman v. Hyder*, 23 N.Y.2d 354, 363, 296 N.Y.S.2d 783, 789–90, 244 N.E.2d 259, 263 (1968); *McKee Electric Company v. Rauland-Borg Corporation*, 20 N.Y.2d 377, 380, 283 N.Y.S.2d 34, 36, 229 N.E.2d 604, 606 (1967). As for the telephone calls, which concerned the price of certain lot-by-lot transactions (¶ 27, Novik Affidavit; ¶¶ 28, 29, Novoson Affidavit), when they were initiated by defendant they originated either in St. Louis or in Greensboro. Interstate negotiations by telephone do not subject the caller to the jurisdiction of the receiver. *Galgay v. Bulletin Company, Inc.*, *supra*, 504 F.2d at 1064; *Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.*, *supra*, 411 F.Supp. 1021; *Aero-Bocker Knitting Mills, Inc. v. Allied Fabrics Corporation*, 54 A.D.2d 647, 648, 387 N.Y.S.2d 635, 636 (1st Dept. 1976); *Glassman v. Hyder*, *supra*, 23 N.Y.2d at 357, 296 N.Y.S.2d at 785, 244 N.E.2d at 260; *cf.*, *Parke-Bernet Galleries, Inc. v. Franklin*, 26 N.Y.2d 13, 15, 17, 308 N.Y.S.2d 337, 338, 340, 256 N.E.2d 506, 508 (1970) (there, the telephone was used not to establish the terms of a transaction, but to effect the transaction).

■ SBBI claims, and Soft-Fab concedes, that on three occasions, SBBI shipped goods into New York on behalf of Soft-Fab. The goods shipped were sample yardage (¶ 17, Novoson Reply Affidavit). In light of the fact that the volume of yardage was infinitesimal—less than one tenth of a percent of the amount of fabric that was processed by SBBI—and in light of the fact that the cause of action arises from the processing work, not from the shipment of negligible samples, it cannot be said that the shipments were a "sustained and substantial transaction of business here," sufficient to establish jurisdiction. *Parke-Bernet Galleries, Inc. v. Franklyn*, *supra*, 26 N.Y.2d at 19, 308 N.Y.S.2d at 341, 256 N.E.2d at 509.

■ Finally, SBBI pins jurisdiction on a single visit to New York by the officers of Soft-Fab. During this one visit, which lasted a matter of hours, Soft-Fab's people met separately with SBBI (¶ 8, Novoson Affidavit) and also with customers who have no relationship to the instant dispute (¶¶ 2–4, Novoson Supplemental Reply Affidavit). The New York visit is not an adequate predicate for jurisdiction. First, insofar as it was the occasion for a meeting about the contract that was never consummated (¶ 22, Novik Affidavit) (or for calls on customers unrelated to this litigation) it cannot have given rise to this cause of action. Even if the meeting with SBBI concerned problems experienced in relation to the lot-by-lot relationship, one such "trouble shooting" meeting does not amount to a transaction of business for the purpose of C.P.L.R. § 302(a)(1). *Concrete Detailing Services, Inc. v. Thomsson Steel Co., Inc.*, *supra*, 411 F.Supp. 1021; *McKee Electric Company v. Rauland-Borg Corporation*, *supra*, 20 N.Y.2d at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607.

■ Not having transacted business here, the defendant is beyond this court's personal jurisdiction. Accordingly, the motion to dismiss is granted (mooting the alternative

motion to transfer), and, as a consequence, plaintiff's application for a preliminary injunction is denied.

It is so ordered.