Jack **FORGASH** and Stuel Realty
Management Corp., Plaintiffs,

v.

Harold **PALEY**, Corporate Finance
Associates and Bankers Life
Company, Defendants.

No. 86 Civ. 9286 (EW).

United States District Court,
S.D. New York.

April 30, 1987.

Haas, Greenstein, Hauser, Sims, Cohen & Gerstein, P.C., New York City, for Jack

Forgash and Stuel Realty Management Corp.; Noel W. Hauser, of counsel.

Booth, Lipton & Lipton, New York City, for Harold Paley and Corporate Finance Associates; James C. Olson, of counsel.

EDWARD WEINFELD, District Judge.

Defendants Harold Paley and Corporate Finance Associates ("CFA") move to dismiss this complaint, predicated on diversity of citizenship, on the ground of lack of *in personam* jurisdiction over them. Alternatively, they move to transfer the action to the District of Arizona pursuant to 28 U.S.C. § 1404. The depositions of defendant Harold Paley and Joseph Klein, president of defendant CFA, were taken, limited to the issue of jurisdiction.

### Factual Background

Plaintiff Jack Forgash is a New York resident and principal of Stuel Realty Management Corp., located in New York. Defendants Harold Paley and CFA, a mortgage broker, are Arizona residents who entered into an oral contract with plaintiff to obtain mortgage financing for a shopping center located in Bloomfield, New Jersey, of which Forgash was the general partner.

In support of the motion to dismiss, Paley affirmed by affidavit that neither he nor CFA does any regular business in New York; that he does not maintain an office for the transaction of business here; that he has not closed a loan involving a New York lender in the last five years; and that he does not have any employees or agents residing in New York. In further support of their motion to dismiss, defendants note that the oral agreement upon which plaintiffs predicate their claims was executed in Arizona, and concerns property in New Jersey. Although Paley acknowledges that he communicated with Forgash by telephone while Forgash was in New York, Paley was never present in New York in connection with the contract at issue.

During his deposition Paley testified that he regularly initiates telephone contacts with a large number of lenders across the country, two of which are located in New York. Last year, Paley telephoned these two New York lenders, but did not consummate any transactions as a result. Although they assert that defendants' activities in New York generate substantial brokerage commissions, plaintiffs fail to cite a single instance of such a commission having been paid to defendants.

Paley's relationship with Forgash began when Paley telephoned one Steve Lichtman in New York at the suggestion of an acquaintance. Paley had heard that Lichtman knew a lot of people in the real estate business, and called him on the chance that he might obtain some brokering business. Lichtman then, by long distance telephone, introduced Paley to Forgash, who was interested in refinancing the mortgage of a New York City cooperative apartment house of which he was a member of the board of directors. Paley contacted some prospective lenders, but the transaction was never consummated.

Some time later, Forgash telephoned Paley in Arizona and requested his help in obtaining a financing commitment for a shopping center in Bloomfield, New Jersey. After some investigation (including the unsuccessful solicitation of the New York bank Emigrant Savings Bank), Paley informed Forgash that Bankers Life Company, an Iowa bank, was prepared to issue a commitment for the mortgage.[1] Paley also informed Forgash that a "good faith" deposit of $22,500 was required. Forgash then drew a check in that amount payable to Paley personally, which he mailed to Paley at his office in Phoenix, Arizona. The proposed financing of the New Jersey property did not materialize; plaintiffs claim that Paley wrongfully retained the proceeds of the check and did not pay any portion of the funds to either Bankers Life or his employer.

### Discussion

Because no evidentiary hearing has been held with respect to defendants' amenability to suit in New York, plaintiffs must

---

1. Although plaintiffs originally included Bankers Life as a defendant in this action, the claims against Bankers Life have been dismissed by stipulation of the parties.

make a *prima facie* showing [2] that personal jurisdiction exists over defendants by virtue of New York's long-arm statute, C.P.L.R. §§ 301 and 302, which controls this diversity action.[3] Plaintiffs assert that *in personam* jurisdiction over the defendants is proper because the defendants: 1) do business within the state; 2) have transacted business within the state and the cause of action arises out of that business; and 3) have committed a tort outside the state causing injury within the state.

### A. *C.P.L.R. § 301*

Under § 301, a non-domiciliary is subject to suit in New York if he is found to be doing business within the state. In determining whether a defendant is doing business in New York, courts weigh a variety of factors including: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." [4] A defendant will be forced to defend an action in New York only if its business in the state is done "not occasionally or casually, but with a fair measure of permanence and continuity." [5]

■ Standing alone, the fact that Paley placed two telephone calls per year to New York firms does not warrant the assertion of "doing business" jurisdiction over him or CFA. Defendants have no New York office, own no property and maintain no bank accounts within the state, and have no employees assigned to work in New York. Plaintiffs have not made a *prima facie* showing that jurisdiction would be proper under § 301.

### B. *C.P.L.R. § 302(a)(1)*

C.P.L.R. § 302(a)(1) confers personal jurisdiction over a defendant who transacts business within the state, provided that the business transacted bears a substantial relationship to the cause of action asserted.[6]

■ Paley's only transaction of business relevant to this litigation is a telephone call from Paley in Phoenix to Forgash in New York, asking Forgash for a $22,500 deposit in connection with the proposed mortgage for the New Jersey realty, as well as several other calls to Forgash about the proposed mortgage.[7] It is not disputed that it was Forgash who solicited Paley's services by telephoning him in Arizona to inquire whether he would help him procure mortgage financing for New Jersey property he sought to purchase. While Forgash and Paley may have worked together previously to obtain financing for real estate in New York, defendants have not transacted business in New York with respect to the financing for the New Jersey property.

■ C.P.L.R. § 302(a)(1) is not satisfied by showing that an offer placed inside New York by telephone is accepted by an

**2.** See *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir.1985); *see also CutCo Industries v. Naughton,* 806 F.2d 361 (2d Cir.1986); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984); *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975).

**3.** *United States v. First Nat'l City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Hoffritz, supra,* 763 F.2d at 57; *Arrowsmith v. U.P.I.,* 320 F.2d 219, 223 (2d Cir.1963) (en banc).

**4.** *Hoffritz, supra,* at 58; *accord Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965).

**5.** *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917); *accord Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982).

**6.** See *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981); *see also Beacon Enterprises, supra,* 715 F.2d at 765; *Grosser v. Commodity Exchange, Inc.,* 639 F.Supp. 1293, 1307 (S.D.N.Y.1986).

**7.** The parties do not know the exact number of calls Paley placed to New York concerning the proposed mortgage, but agree that fewer than a dozen such calls were placed.

out-of-state party.[8] Moreover, a defendant, absent other factors, will not be subject to suit in New York simply because a New York resident solicited his services,[9] or that the defendant placed telephone calls to and corresponded with a New York business in connection with the purchase and sale of out-of-state property.[10]

Looking at the "totality of the circumstances,"[11] plaintiffs have not met their burden of showing that defendants' activities in New York, limited to the telephone calls referred to, bear a substantial relationship to the cause of action at hand, which involves a proposed mortgage financing of New Jersey property, effected by an Arizona broker conducting business with an Iowa bank.

## C. *C.P.L.R. § 302(a)(3)*

C.P.L.R. § 302(a)(3) confers jurisdiction over any defendant who commits a tort without the state causing injury in the state, and either regularly does or solicits business in New York, or expects or reasonably should expect the tortious act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Plaintiffs must state a valid tort claim before jurisdiction may be asserted over defendants under § 302(a)(3). Plaintiffs allege three causes of action arising out of the allegedly wrongful retention of the proceeds of the check: 1) breach of contract; 2) monies had and received; and 3) false representations. Only the latter of these may be properly classified as a tort. Defendants argue that plaintiffs, by raising this third claim, are trying to convert what is essentially only a contract claim into a cause of action for tort.

Defendants rely on this Court's decision in *Trafalgar Capital Corp. v. Oil Producers Equipment,*[12] for the proposition that a claim for fraudulent representations made to induce a plaintiff to enter into a contract is not a tort cause of action for purposes of § 302(a)(3). The *Trafalgar* opinion noted that any other rule would tend to confer § 302(a)(3) jurisdiction over any breach of contract claim where the plaintiff was a New York resident. Along the same lines, defendant cites the New York Court of Appeals decision in *Fantis Foods, Inc. v. Standard Importing,*[13] for its argument that no injury was caused within the state simply due to plaintiff's residence in New York. The New York courts adhere to the well-established rule that

> the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there.[14]

If plaintiff's claim is classified as a tort, such claim would be an intentional tort of conversion, and it would not be unreasonable to expect defendant to come into a New York court to answer for his actions. However, it is far more realistic to characterize this complaint as basically alleging breach of contract. The claim that Forgash's check was not properly transmit-

---

**8.** *Glassman v. Hyder,* 23 N.Y.2d 354, 362, 296 N.Y.S.2d 783, 789, 244 N.E.2d 259, 265 (1968); *cf. Katz & Son Billiard Prods. v. Correale & Sons,* 20 N.Y.2d 903, 285 N.Y.S.2d 871, 232 N.E.2d 864 (1967).

**9.** *Mayes v. Leipziger,* 674 F.2d 178, 184 (2d Cir. 1982).

**10.** *Advance Realty Associates v. Krupp,* 636 F.Supp. 316 (S.D.N.Y.1986); *see generally L.F. Rothschild, Unterberg, Towbin v. McTamney,* 89 A.D.2d 540, 452 N.Y.S.2d 630 (1st Dept.1982), *aff'd,* 59 N.Y.2d 651, 463 N.Y.S.2d 197, 449 N.E.2d 1275 (1983).

**11.** *See Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors,* 510 F.2d 870 (2d Cir.1975).

**12.** 555 F.Supp. 305 (S.D.N.Y.1983); *cf. Rates Technology, Inc. v. Diorio,* 626 F.Supp. 1295, 1299 (E.D.N.Y.1986).

**13.** 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980).

**14.** 425 N.Y.S.2d at 787, 402 N.E.2d at 126.

ted by Paley to Bankers Life, an Iowa bank, arises solely out of an oral agreement entered into between the parties. The claim is essentially that Paley induced Forgash to give him $22,500 by stating that he could obtain mortgage financing for him.[15] As such, this case is very much like *Trafalgar*, which militates heavily against viewing plaintiff's cause of action as one for tort. In conjunction with *Fantis Foods*, which requires that the asserted injury be something more than an indirect financial loss suffered by a New York resident, *Trafalgar* mandates that plaintiff in this case be precluded from relying on C.P.L.R. § 302(a)(3) as a basis for jurisdiction, absent a clear factual showing that such long arm jurisdiction is warranted. No such showing has been made.

Defendant's motion to dismiss the complaint for lack of personal jurisdiction is granted.

So ordered.

15. Parenthetically, while the pleadings must be accepted for purposes of this motion, it is indeed odd that plaintiff, experienced in transactions of this type, did not make the check payable to Bankers Life or included it is a co-payee.