**WISEHART, FRIOU & KOCH, Plaintiff,**

v.

**Herbert W. HOOVER, Jr., Defendant.**

**No. 78 Civ. 1001 (CHT).**

United States District Court,
S. D. New York.

May 22, 1979.

Wisehart, Friou & Koch, New York City, for plaintiff; Robert E. Friou, New York City, of counsel.

Lipkowitz & Plaut, New York City, for defendant; Peter P. Kenny, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The defendant in this action, Herbert W. Hoover, Jr., has moved for dismissal of the complaint for lack of in personam jurisdiction and for failure to state a claim. Rules 12(b)(2), (6), Federal Rules of Civil Procedure ("Rules").[1] Hoover is a resident of

---

1. Defendant does not appear to press the Rule 12(b)(6) claim with great fervor at this point. In the initial papers he grounded that argument in what he saw as a defect in the original complaint which was filed in state court and removed to this court. Apparently the original complaint did not contain a statement of personal jurisdiction facts, and thus ran afoul of the New York rule that "whe[n] a summons is served outside the territorial limits of a [New York] court, the basis for jurisdiction must be alleged in the pleadings. *All-State Credit Corp. v. Riess*, 61 Misc.2d 677, 306 N.Y.S.2d 596 (Sup.Ct.App. Term, 2d.Dep't 1970). In *Lebensfeld v. Tush*, 43 Misc.2d 919, 252 N.Y.S.2d 594 (Sup.Ct.1964), the court held that it could not permit an amendment to a complaint that had a jurisdictional defect and thereby permit a plaintiff to cure retroactively an invalid complaint and service. Building on the *Lebensfeld* holding, this defendant points out that the removal jurisdiction of this court is derivative, and "[i]f the state court lacks jurisdiction . . . of the parties, the federal court acquires none." *Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922).

The plaintiff counters with two theories: first, that federal procedure relating to amendment of a complaint applies even to a removed action, *citing Freeman v. Bee Machine Co. Inc.*, 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509

Florida, and the plaintiff law firm is a resident of New York. The diversity action concerns the alleged failure of Hoover to pay legal fees in the sum of $250,000 for services purportedly rendered by the plaintiff and, in particular, by Robert E. Friou, a member of the firm. For the following reasons, the motion is denied.

The defendant is the scion of the famous industrial family and is former Chairman and President of The Hoover Company, an international corporation with annual net sales purportedly reaching many hundreds of millions. Affidavit of Robert E. Friou, sworn to March 18, 1978, ¶ 6(e) ("Friou Aff. I"). The plaintiff partnership was formed in early 1976; it states that it in part succeeded to and in part earned the alleged debt from Hoover. Affidavit of Robert E. Friou, sworn to March 23, 1978 ("Friou Aff. II"). Apparently Friou was a family friend of the defendant, see letter from Robert E. Friou to Herbert W. Hoover, Jr., dated December 1, 1977, Exh. B to Complaint, and the claim for legal services arises from an allegedly continuous course of advice to, and representative activity in behalf of, Hoover during the period 1973 to 1977.

Friou contends that he acted in New York for his client in areas of financial and estate planning, as advisor to the defendant on the affairs of The Hoover Company, as architect of a substantial loan reconsolidation at The Bank of New York, with regard to various litigations in which Hoover had an interest, and as general business and financial consultant in the many matters "of great importance" to Hoover. Friou Aff. I, ¶¶ 6–8, 13. Friou claims that the defendant participated in certain of these New York activities, once personally and often through the presence here of his personal business manager, William M. Caddey. The defendant neither contradicts Friou in his description of Caddey's function nor refutes Friou's enumeration of the occasions on which he met with Caddey and other Hoover representatives on various matters. Affidavit of Robert E. Friou, sworn to January 3, 1979, passim ("Friou Aff. III"). Instead the defendant seeks to characterize Caddey's role in the New York transactions as a "passive" one, and states that his appearances here were instigated and controlled by the plaintiff, and that he entered the state as a mere "trouble shooter." Affidavit of Peter P. Kenny, sworn to December 26, 1978, ¶ 12; Defendant's Post-Discovery Memorandum at 9. The defendant claims that his own acts and those of his

---

(1943), and second, that the holding in *Lebensfeld* was undermined by the decision in *Badger v. Lehigh Valley R. R. Co.*, 45 A.D.2d 601, 360 N.Y.S.2d 523 (4th Dep't 1974).

The first point is not well taken. *Freeman* holds that the federal rules govern amendment to the *substance* of a removed complaint, but it reiterates the *Lambert Run* holding that jurisdictional defects cannot be cured after removal. The second point relies on Professor McLaughlin's endorsement of *Badger* and criticism of *Lebensfeld* in his Practice Commentary to C.P. L.R. Section 302 (McKinney Supp. 1978–1979). There he explains that the *Badger* panel distinguished *Lebensfeld* on two grounds:

(1) in *Lebensfeld*, plaintiff needed court permission to amend the complaint, whereas in *Badger* the plaintiff still had time to amend the complaint as a matter of right; (2) in *Lebensfeld*, the jurisdictional allegations asserted in the amended complaint involved a new theory of liability, whereas in *Badger* plaintiff added the jurisdictional allegations to the theories already pleaded in the first complaint.

*Id.* at 24.

However, according to Professor McLaughlin the attempt to distinguish *Lebensfeld* is "unsatisfactory" because

[j]urisdiction depends on the facts that exist at the time of service and cannot turn on whether the plaintiff is amending the complaint as a matter of right or by permission of the court. . . . It would have been better if the Appellate Division in *Badger* had simply declared *Lebensfeld* unsound.

*Id.*

There is no need to adopt Professor McLaughlin's suggestion that *Lebensfeld* be ignored, for the facts at bar fall within the *Badger* rationale. Because the action was removed from state court before a responsive pleading was served, the plaintiff still had the opportunity at that point to amend the complaint as of right pursuant to Rule 15(a). It has done so, and the new complaint adds no new cause of action. *See* Amended Complaint ¶ 8. Thus the *Badger* standard has been met, and the jurisdictional facts have been alleged to the satisfaction of the Court. Therefore, the defendant's motion to dismiss for failure to state a claim is denied.

agents in New York[2] do not amount to purposeful activity here and that the claim in issue does not in any event arise from whatever presence there was.

The reams of material submitted to the Court on this matter more befit a decision on the merits than a ruling on a jurisdictional point, especially as the matter at bar is relatively simple. To assess personal jurisdiction the federal court sitting in diversity must apply the law of the forum state to the jurisdictional facts. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc). Here the plaintiff asserts jurisdiction pursuant to New York's long-arm statute, C.P.L.R. § 302(a)(1), which provides that

[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

1. transacts any business within the state.

It is settled law that in the exercise of long-arm jurisdiction over a foreign domiciliary there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *Longines-Wittnauer Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 451–52, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68 (1965). The plaintiff bears the burden of proving jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), but at this juncture need only make a prima

facie showing that jurisdiction lies. *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). That showing will suffice here because "amenability to service [in long-arm situations] turns on whether defendant has [transacted business] or 'committed a tort' in the forum; thus the threshold jurisdictional question often puts in issue the facts alleged as a basis for relief." *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir. 1973). "To avoid precipitating too extensive an investigation of the merits at this stage of the litigation, only a prima facie showing is required on a jurisdiction motion." 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1608, at 250 (1969); *accord, Block Industries v. D. H. J. Industries Inc.*, 495 F.2d 256, 259 (8th Cir.); *Jetco Electronic Industries, Inc. v. Gardiner, supra; Costin v. Olen*, 449 F.2d 129 (5th Cir. 1971); *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307 (S.D.N.Y.1975); *Alosio v. Iranian Shipping Lines, S. A.*, 307 F.Supp. 1117 (S.D.N.Y.1970). And, where the suit is grounded in a contractual relationship, the plaintiff need not show prima facie evidence of breach, but merely prima facie evidence that the services sued on were to be performed in whole or in part in the forum state and that the suit arises from the contractual relationship. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

The defendant's major argument against jurisdiction here turns on the fact that, as Hoover's attorney, Friou was also his "agent" in the situations that generated the fees now sued for. From this the de-

---

2. There can be no doubt that Caddey and other representatives of Hoover would be considered his "agents" for purposes of imputing long-arm activity to him in this state. In a recent review of the term "agency" as it is construed by New York courts and courts applying New York law, it was found to have been given a "liberal" interpretation.

There is no requirement . . . that a formal or exclusive agency exist before the acts of an in-state representative may be imputed to the nondomiciliary in an action brought by someone other than the purport-

ed agent. In a suit by a third party against a nonresident in which suit it is alleged that the nonresident's representative acted within New York State on the nonresident's behalf, the court must determine whether such nonresident requested the performance of that purposeful activity in New York and whether such in-state activity benefitted him. If this two-pronged test is satisfied, the in-state activity of the representative is attributable to the nonresident.

*Eliah v. Ucatan Corp.*, 433 F.Supp. 309, 313 (W.D.N.Y.1977) (citations omitted).

fendant reasons that he is sheltered by New York precedents that forbid the local agent from suing his nonresident principal using the agent's own forum activities as a jurisdictional predicate. That is a correct statement of New York law, but it is a distortion of the facts in this case. It is true that the New York Court of Appeals has explained that agency cases in which jurisdiction has been denied

> involved agents who were suing their principals, [and were cases in which] the plaintiff was relying on his own activities within the State, and not those of the defendant, as the basis for jurisdiction. In other words, in no one of these cases had the defendant himself engaged in purposeful activity within the State nor had the cause of action arisen out of transactions with third parties conducted through an agent.

*Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 19 n. 2, 308 N.Y.S.2d 337, 341 n. 2, 256 N.E.2d 506, 509 n. 2 (1970) (citations omitted). Moreover, the *Parke-Bernet* footnote was endorsed three years later by the New York Court of Appeals in a lawyer-client situation. In *Haar v. Armendaris*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), *rev'g* 40 A.D.2d 769, 337 N.Y.S.2d 285 (1st Dep't 1972), the attorney was retained by mail sent to him in Massachusetts from a principal in California with instructions to participate in New York negotiations. The Appellate Division sustained jurisdiction, but the Court of Appeals reversed, adopting the dissent below. There it was pointed out that this was "not an action between defendant and a third party, but rather between plaintiff as agent for defendant and defendant-principal." In those circumstances the *Parke-Bernet* footnote controlled because there was no evidence of any independent, purposeful activity "engaged in *by the defendant itself* within this State, out of which the action arose . . . ." *Haar v. Armendaris, supra*, 40 A.D.2d at 770, 337 N.Y.S.2d at 287–88 (emphasis added).

■ The defendant has suggested that *Haar* controls, but this Court's conclusion is quite the opposite. Although the plaintiff was admittedly Hoover's agent vis-a-vis third parties in New York, to the extent that Hoover came to New York to confer with the plaintiff on these matters there can be no dispute that he entered the state and committed purposeful acts here. Moreover, to the extent that Caddey and other Hoover agents entered the state to participate with the plaintiff in advancing Hoover's interests, that activity will be imputed to Hoover. Finally, to the extent that those agents entered New York to instruct the plaintiff about further efforts in Hoover's behalf, the plaintiff was in a sense itself a "third party" whose retainer contract was being continually renewed by Hoover through Caddey and the others. *Haar* is inapposite on these facts.

■ The defendant argues in addition that the cause of action here does not "arise" from the transaction of business because no particular business transaction conducted in behalf of Hoover is now in dispute. The argument is without merit. "The defendant's New York activities must be substantially proximate to the allegedly unlawful acts before the cause of action can be said to arise out of those activities." *Xedit Corporation v. Harvel Industries Corp., Fideipac*, 456 F.Supp. 725, 729 (S.D. N.Y.1978). Here the plaintiff's fulfillment of its obligation as retained counsel parallels its performance of legal services for the defendant in relationships with others. The latter activity generates the contractual obligation on the client's part. Since there can be no argument that business was transacted, and the plaintiff's allegations of its role therein cannot be disputed in a motion to dismiss, it must be said in the fullest sense that the obligation, if any, to pay legal fees "arose" from the business transactions conducted here.

■ On the facts presented to the Court there is no difficulty in recognizing the "purposeful activity" of the *defendant* which will support long-arm jurisdiction. *Hanson v. Denckla, supra*. The requisite activity may be a series of acts, no single one of which is sufficient, but which, in the

aggregate, lead to a fair conclusion of presence. *Longines-Wittnauer, supra.* On the other hand, it may be that

> the nature and purpose of a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of our courts . . . [although] physical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302 . . ..

*Presidential Realty Corp. v. Michael Square West, Ltd.,* 44 N.Y.2d 672, 673, 405 N.Y.S.2d 37, 38, 376 N.E.2d 198, 199 (1978) (mem.). In that recent restatement of long-arm concepts, a unanimous court of appeals refused jurisdiction where the material terms of the contract at issue had been negotiated outside the state, but one meeting involving modifications was held in New York. The record did not support jurisdiction because it was barren of proof "tendered by one having personal knowledge either of the fact or the extent of any negotiations" in New York. *Id.*

By contrast, here we have the affidavits of Friou describing, of his own knowledge, meetings at which the defendant or his agents were present in New York, including two meetings on July 14, 1976 where Friou and his partner, Arthur M. Wisehart, met here with Hoover himself and Caddey to discuss Hoover's "personal and corporate interests" and "matters relating to defendant's interests in The Hoover Company." Friou Aff. I, ¶¶ 6(c)–(d). The defendant attempts to downplay that appearance in New York by stating that the record does not "indicate that defendant's presence in New York [was] in any way related to plaintiff's delivery of the legal services which are the subject matter of this suit." Defendant's Post-Discovery Memorandum at 10. However, the Court need not determine whether Hoover's visit to New York is sufficient by itself to evince "purposeful activity" in this state (although for a prima facie showing it would appear to be adequate). Rather, there were numerous additional meetings in New York

attended by Caddey and the plaintiff at which Hoover's business was conducted. The meetings included several in 1974 to discuss an outstanding loan to Hoover from The Bank of New York in the amount of $1,300,000, Friou Aff. I, ¶ 7(b); further meetings "from time to time" after 1974 concerning the administration of that loan, *id.* ¶ 7(d); and a dozen other meetings attended by Caddey and members of the plaintiff firm, including one on April 22, 1974 concerning The Bank of New York loan consolidation, Friou Aff. III, ¶ 4(a); one on May 3, 1974 on the same subject, *id.* ¶ 4(b); meetings on February 24, 25 and 26, 1975 concerning the "rearrangement of the defendant's entire loan structure," *id.* ¶¶ 4(h)(1)–(2); a meeting with Bank of New York officers on May 5, 1975, *id.* ¶ 4(i); two other meetings in 1975 at Friou's office but in his absence between Caddey, Andres Iriondo (Hoover's tax accountant) and Friou's colleagues, *id.* ¶¶ 4(j), (k); and meetings on February 17, May 17, July 6 and November 16, 1977 with Caddey to discuss termination of certain litigation, to discuss legal and business affairs, and to negotiate a loan with the Chelsea Union Bank. Friou Aff. I, ¶¶ 8(d)–(10), 12. Obviously there is no need to fix on the Hoover visit when there is so much evidence of other activity in New York.

The Court need only add that in litigating this motion the parties appear to have cited the entire law of personal jurisdiction in New York. Because the conclusion reached today is entirely harmonious with the applicable precedents, and because neither the progress of this case nor the demands of judicial economy would be advanced by a case-by-case analysis, the Court will forbear any such exercise.

The motion to dismiss for lack of in personam jurisdiction is denied.

So ordered.