■ CATO SHOW PRINTING CO., INC., Respondent, v W. HOWELL LEE, Doing Business as HOWELL LEE ASSOCIATES, Respondent, and ALPHA GRAPHIC MA-

CHINERY, INC., Appellant. — Order unanimously reversed, with costs, motion granted and complaint dismissed. Memorandum: Alpha Graphic Machinery, Inc., a Missouri corporation, appeals from an order at Special Term which denied its motion to dismiss the complaint of Cato Show Printing Co., Inc., a New York corporation, for lack of personal jurisdiction. The order appealed from also granted Cato discovery of Alpha in order to determine whether the court had jurisdiction of W. Howell Lee, a resident of Connecticut. The facts are as follows: Defendant W. Howell Lee is a resident of Cos Cob, Connecticut, who is engaged in buying, selling and locating printing machinery under the name of Howell Lee Associates. Lee made a routine telephone call to plaintiff, Cato, on September 19, 1979 to see if Cato needed any equipment which Lee could supply. The following day Richard H. Cowles, Sr., an officer and director of Cato, called Lee and began negotiations to obtain a printing press. Lee found that defendant Alpha, engaged in the business of buying and selling printing machinery with its office in Kansas City, Missouri, had the item Cato wanted. Arrangements were then made for Cato's representative, Richard H. Cowles, Jr., to see the press in Missouri. When Lee spoke to Cowles, Sr., on September 30, 1979, he was advised that the inspection arrangements had been made for October 2, 1979. The inspection occurred as planned. Mr. Cowles, Sr., claims in an affidavit that the day after the inspection there was a meeting in New York City between representatives of Alpha and Cato. Unfortunately, however, there is no affidavit from Cowles, Jr., who allegedly represented Cato, and the other affidavits in the record before us of those supposedly present contain no reference to such meeting. E. P. Francke, president of Alpha, states in an affidavit that Cowles, Jr., asked him if Cato and Alpha could deal directly to save the markup for the middleman. Francke alleges that he said "no" and that he never discussed price with Cato or any other terms of a direct sale to Cato. It appears that Cato and Lee thereafter entered into an agreement for the sale of the equipment from Lee to plaintiff, which was confirmed in writing in a letter dated October 12, 1979 accompanied by an invoice for the purchase price of the same date. Lee and Cowles, Sr., both state in their affidavits that on October 4, Lee and Cato negotiated a $175,000 sales price which is consistent with Francke's allegation that he never discussed price with Cato. Cowles, Sr., also alleges that when Lee and Cato agreed on the price, Lee instructed Cato to mail Alpha a $10,000 down payment, which Cato did by check dated October 5, 1979. The balance of $165,000 was due in advance, with "delivery" to be "where is" (in Missouri). On October 16, 1979, according to Cowles, Sr., Lee left for Hawaii and within three days the deal was dead. Cowles, Sr., claiming that although Cato had obtained financing and so advised the defendants on October 17, 1979, nevertheless, on October 19, 1979 when Cowles, Jr., called regarding the location of the printing press, he was told it had been sold to someone else. The president of Alpha explains this sudden turn of events only by stating that he had advised Lee that if "necessary funds" were not transferred to Alpha by a "certain date", there would be no sale. Such funds were apparently not forthcoming. Alpha sent a check to Cato dated October 19, 1979 refunding the $10,000 down payment. We turn now to the law. Cato's affidavits do not contain specific allegations that Alpha has the kind of "corporate presence" in New York required by the traditional "doing business" test in order to sustain personal jurisdiction over it (CPLR 301; *Tauza v Susquehanna Coal Co.*, 220 NY 259; *Bryant v Finnish Nat. Airlines*, 15 NY2d 426). Cato concedes that Alpha is a foreign corporation with its principal place of business in Missouri. Its only allegations that Alpha is "doing business" in New York are those set forth in the verified complaint and repeated even more generally in an affidavit. Although Cato requests discovery to support its claim that Alpha "transacts a great deal of business in

New York State", the burden of establishing jurisdiction rests on the party asserting it and plaintiff must show definite evidentiary facts to support the propriety of service outside New York. In order to obtain a hearing on this issue plaintiffs must have made a sufficient start and shown their position not to be frivolous. Such is not shown on the record before us *(Badger v Lehigh Val. R.R. Co.,* 45 AD2d 601). Although physical presence in New York is not a prerequisite for finding personal jurisdiction under the long-arm provisions of CPLR 302 (see *Parke-Bernet Galleries v Franklyn,* 26 NY2d 13; *Rothschild, Unterberg, Towbin v Thompson,* 78 AD2d 795), "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" *(Hanson v Denckla,* 357 US 235, 253; *Ford v Unity Hosp.,* 32 NY2d 464, 471; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, cert den *sub nom. Estwing Mfg. Co. v Singer,* 382 US 905). Since there must be evidence, absent here, of some "purposeful activities" within the State that would justify bringing the nondomiciliary before the courts of New York, CPLR 302 does not authorize long-arm personal jurisdiction over Alpha based on its own acts *(McGowan v Smith,* 52 NY2d 268, 271). We place no reliance on the alleged October 3, 1979 meeting in New York City because there is no proof before us by anyone with personal knowledge of the fact or the extent of negotiations between Alpha and Cato. Where the papers are insufficient to determine whether the court has jurisdiction, ordinarily there should be a hearing held where jurisdictional facts may be established *(Charles Abel, Ltd. v School Pictures,* 40 AD2d 944; *Bristol Recreation Systems v Contract Furnishers Corp.,* 39 AD2d 639). Where the affidavits present conflicting facts on significant New York contacts, a hearing is necessary *(Dulman v Potomac Baking Co.,* 75 AD2d 863; *Millner Co. v Noudar, Lda.,* 24 AD2d 326). However, the only reason to grant a hearing in this case on the issue of "transacting business" would be to learn what negotiations or agreements were made at the alleged New York City meeting. However, Cato was at the meeting in the person of Cowles, Jr. It had adequate opportunity to put those facts properly before the court, but failed to do so. Without such proof there is not sufficient evidence in the record to confer jurisdiction over Alpha *(Presidential Realty Corp. v Michael Sq. West,* 44 NY2d 672, 673; *McKee Elec. Co. v Rauland-Borg Corp.,* 20 NY2d 377), or to show that a hearing is required because facts "may exist" to afford jurisdiction (cf. *Badger v Lehigh Val. R.R. Co.,* 45 AD2d 601, 603, *supra; Peterson v Spartan Inds.,* 33 NY2d 463, 466). Further, the activities of a representative of a nondomiciliary in New York will be attributed to the nondomiciliary for the purpose of long-arm jurisdiction if the nondomiciliary requested the performance of those activities in New York, and those activities benefit it, regardless of whether the representative acted as an agent or an independent contractor *(East N.Y. Sav. Bank v Republic Realty Mtge. Corp.,* 61 AD2d 1001). However, the facts reveal that defendant Alpha exercised no control over codefendant Lee. Furthermore, Lee could not have been Alpha's agent in soliciting Cato to buy Alpha's press since Lee's original solicitation of Cato was made before Lee had spoken to Alpha or discovered the existence of Alpha's press. Thus, Cato's arguments that Alpha had a significant New York contact by soliciting Cato's business through Lee as an agent must fail. The record is clear that Lee is an independent broker or middleman engaged in a business where he puts together purchases of equipment by different parties for a profit. He was not a person under Alpha's control, nor did he work as its agent. Finally, Special Term directed Alpha to submit to discovery in order to determine the court's jurisdiction over Lee. Since there is no jurisdiction in New York over Alpha, it follows that it may not be directed to submit to discovery. (Appeal from order of Monroe Supreme

Court, J. Conway, J. — dismiss complaint.) Present — Dillon, P.J., Hancock, Jr., Doerr, Denman and Moule, JJ.