## PASAME REALTY CORPORATION, Plaintiff,

v.

## RIDGE VILLAGE PARTNERSHIP and Victorio Realty Group, Inc., Defendants.

### No. 83 Civ. 1974 (RWS).

United States District Court,
S.D. New York.

July 27, 1983.

Kass, Goodkind, Wechsler & Labaton, New York City, for plaintiff; Edward Labaton, Marc Fryburg, New York City, of counsel.

Lunney & Crocco, New York City, for defendants; Andrew P. Saulitis, New York City, of counsel.

OPINION

SWEET, District Judge.

Defendants Ridge Village Partnership ("Ridge") and Victorio Realty Group, Inc. ("Victorio") have moved pursuant to Fed.R. Civ.P. 12(b)(2) to dismiss the complaint of plaintiff Pasame Realty Corporation ("Pasame") on the ground of lack of personal jurisdiction or, in the alternative, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. 1404(b) to dismiss or transfer this on the ground of improper venue. For the reasons stated below, the motion to dismiss for lack of personal jurisdiction will be granted.

Pasame, a New York corporation with its principal place of business here, commenced this diversity action in March, 1983 seeking damages for alleged fraud and breach of warranty in connection with the offering for sale of a shopping center located in Wheat Ridge, Colorado (the "Shopping Center"). Pasame's complaint alleges that in February, 1983 it executed an agreement of sale with Ridge in which Ridge agreed to sell and Pasame agreed to buy the Shopping Center. Shortly thereafter, Ridge disapproved the agreement. Pasame alleges that Ridge made fraudulent representations in connection with the agreement and that Ridge breached an express warranty to the effect that it was capable of conveying good title.

Ridge and Victorio assert that personal jurisdiction over them in this forum is lacking. Ridge is a Colorado partnership with its principal place of business in Colorado. Victorio is alleged to be an Arizona corporation with its principal place of business in Colorado and to be one of the general partners of Ridge. It is undisputed that the defendants do not do business in New York and that none of the defendants' principals personally transacted business in New York in connection with the claims asserted here. Pasame instead alleges that the defendants transacted business here through an agent, and that personal jurisdiction may therefore be exercised over them pursuant to N.Y.Civ.Prac.L. § 302(a)(1) ("CPLR"),

which provides in pertinent part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state . . . ." The following facts relevant to this assertion are culled from the affidavits submitted on this motion and are undisputed.

The events at issue here were set in motion by an "Exclusive Right to Sell Listing Contract" dated May 5, 1982 whereby Victorio listed the Shopping Center for sale with Brad W. Calbert ("Calbert"), a licensed Colorado real estate broker whose office is located in Denver, Colorado. This contract expired by its own terms in December, 1982 without a sale having been consummated. In early January, 1983, however, Calbert notified Victorio that he wished to register Alan J. Marcus ("Marcus"), the president of Pasame, as a potential buyer of the Shopping Center.

Marcus had first heard of the Shopping Center when he received a letter in September, 1982 from Harold D. Baker ("Baker"). Baker, a New York broker, had seen an advertisement that Marcus had placed in a trade journal. He had received the Shopping Center listing from a broker in Ohio, who had received it from a broker in Denver, who in turn had received it from Calbert.

Marcus expressed interest in the Shopping Center and in January, 1983, Baker sent Calbert a letter stating: "I am authorized to submit this offer on behalf of Alan J. Marcus, 201 East 66 Street, New York, New York 10021, my principal, to purchase the above captioned property on the following terms and conditions . . . ." Baker and Calbert thereafter "communicated" with one another during January, 1983. Baker passed on Marcus's proposals to Calbert and also spoke to Martin Schechter ("Schechter"), Marcus's attorney, and "communicated" to him the seller's position. Schechter drafted a proposed contract of sale, which was sent to Calbert.

In early February, 1983, following a telephone conversation between Calbert and Marcus, Marcus went to Denver and viewed the Shopping Center. During the next two days the parties engaged in negotiations in Colorado and on February 11, 1983 executed the Agreement of Sale at Ridge's offices in Denver. The agreement was subsequently disapproved by letter dated February 16, 1983.

Pasame argues that Baker acted as the defendants' agent in New York within the meaning of CPLR 302(a)(1). In support of this argument, Marcus states that Baker "was acting on behalf of the seller" during the negotiations that took place in January. Baker also states that at all times he "understood" that he was "offering the property on behalf of Ridge." The facts, however, do not support these conclusory contentions. Baker's initial letter to Calbert describes Marcus as his "principal" and states that he was authorized by Marcus to submit the offer on his behalf.

Baker attempts to explain away the use of this language by stating that the term "principal" was used only to indicate that the offer was being submitted on behalf of a purchaser and not another broker or other intermediary. While this may be true, it does not alter the fact that the nature of Baker's activity cannot elevate him to the status of an agent.

Under these circumstances, the cases require that some element of control exist over the purported agent by the person over whom jurisdiction is alleged to exist. As our Court of Appeals has stated, the courts "have looked to the 'realities' of the situation and have construed § 302(a)(1)'s use of the word 'agent' to include any person, who with the consent of the nondomiciliary and under some measure of his control, acts in New York for the benefit of the nondomiciliary." *Mayes v. Leipziger,* 674 F.2d 178, 181 (2d Cir.1982). There is no allegation and no evidence that Baker was under any degree of control from the defendants. Rather, he acted in this transaction simply as a middleman on a commission basis, conveying the parties' various positions with respect to the prospective purchase. *See Cato Show Printing Co. v. Lee,* 84 A.D.2d 947, 446 N.Y.S.2d 710 (4th Dep't

1981) (declining to exercise personal jurisdiction over nondomiciliary where purported agent was "independent broker or middleman engaged in a business where he puts together purchases of equipment by different parties for a profit"); *A. Millner Co. v. Noudar Lda.*, 24 A.D.2d 326, 266 N.Y.S.2d 289 (1st Dep't 1966) (acts of independent broker representing many different companies on a commission basis and in no way under nondomiciliary's control could not serve as basis for exercise of personal jurisdiction). *See also Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968) (acts of independent real estate broker in New York not attributed to nondomiciliary owners of real estate located in Arizona).

Because Baker did not act as an "agent" of the defendants within the meaning of CPLR 302(a)(1), there is no basis for the exercise of personal jurisdiction over them and the motion to dismiss must be granted.

The clerk is directed to enter judgment dismissing the complaint.

IT IS SO ORDERED.