John P. REINER, as Executor of the Estate of Paul Reiner, deceased, and Lincoln Orens, Plaintiffs,

v.

Edith DURAND, individually and as Executrix of the Estate of Marie Elbogen-Lockett, deceased, Defendant.

John P. REINER, as Executor of the Estate of Paul Reiner, deceased and Lincoln Orens, Plaintiffs,

v.

Edith DURAND and Emmy Molles, individually and as Executrices of the Estate of Jan Hans Elbogen, deceased, Defendants.

Nos. 83 Civ. 1017 (SWK), 83 Civ. 1018 (SWK).

United States District Court, S.D. New York.

Feb. 21, 1985.

Tell, Cheser, Breitbart & Lefkowitz, New York City, for plaintiffs.

Grais & Richards, New York City, Hill & Barlow, Boston, Mass., for defendants; David J. Grais, New York City, Ellen M. Semonoff, Boston, Mass., of counsel.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The defendant, Edith Durand, has moved to dismiss the complaints in the two above-captioned actions. She asserts, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and C.P.L.R. § 302, that this Court does not have personal jurisdiction over her. This motion is *DENIED*.

*Reiner v. Durand*, 83 Civ. 1017, is a suit by John P. Reiner, as executor of the estate of Paul Reiner, and by Lincoln Orens against Edith Durand, individually and as executrix of the estate of her deceased mother, Marie Elbogen-Lockett. The related case of *Reiner v. Durand*, 83 Civ. 1018, is a suit by the same plaintiffs against Edith Durand and her sister Emmy Molles, both individually and as executrices of the estate of their deceased brother, Jan Hans Elbogen. Both suits arise from identical retainer agreements entered into by Edith Durand, Emmy Molles, and Jan Hans Elbogen and attorneys Paul Reiner and Lincoln Orens, in 1959. In these retainer agreements the attorneys agreed to represent the claims of Mrs. Durand, Mrs. Molles, Mr. Elbogen and their deceased mother, for the restitution of property expropriated by the Czechoslovakian government, before the U.S. Foreign Claims Settlement Commission. The attorneys were to be paid "ten per centum of the total amount paid pursuant to an award rendered in connection with" the restitution claims. These claims were successful, and in 1962 each claimant received an award of about 5% of his or her approved claim. A percentage payment was all that could be made at the time because only a small amount of money was available to meet the claims. Recently, additional funds, amounting to 71% of the unpaid approved claims, became available to meet the claims. The plaintiffs have brought suit to obtain 10% of the additional funds received by the defendants, based on the 1959 retainer agreements.

In 83 Civ. 1017, the contacts with New York that are at issue are those of Edith Durand. In 83 Civ. 1018, the contacts are those of Jan Hans Elbogen; if his contacts with New York are sufficient for jurisdiction, the court can exercise personal jurisdiction over Edith Durand as his executrix. C.P.L.R. § 302(a).

Section 302(a) provides as follows:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state ...

The first issue to be decided is whether Emmy Molles acted as an agent for her brother and sister within the meaning of CPLR § 302(a) when she initiated the discussions with Reiner and Orens that led to the signing of the retainer agreements by all three siblings. If Mrs. Molles can be considered their agent, the scope of the facts on which jurisdiction may be based is broadened, since in that event Mrs. Molles' communications with the attorneys in New York may be treated as contacts with New York.

The meaning of the term "through an agent" as used in § 302(a) has not yet been definitively interpreted by the New York Court of Appeals. However, the Second Circuit has considered this issue in *Mayes v. Leipziger*, 674 F.2d 178 (2d Cir.1982). The Second Circuit noted that there is conflict among the cases as to how formal an agency relationship must be in order to subject the non-domiciliary principal to jurisdiction in New York. Two cases, *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), and *Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d

259 (1968), "may suggest that § 302(a)(1) envisions application of the traditional common-law concept of agency." *Mayes*, 674 F.2d at 180. However, "federal district courts sitting in New York and lower New York state courts have looked to the 'realities' of the situation and have construed § 302(a)(1)'s use of the word 'agent' to include any person who, with the consent of the non-domiciliary and under some measure of his control, acts in New York for the benefit of the non-domiciliary. See, e.g., *PPS, Inc. v. Jewelry Sales Representatives, Inc.*, 392 F.Supp. 375, 380 (S.D.N.Y. 1975); *Arcata Graphics Corp. v. Murrays Jewelers & Distributors, Inc.*, 384 F.Supp. 469, 472 (W.D.N.Y.1974); *East New York Savings Bank v. Republic Realty Mortgage Corp.*, 61 A.D.2d 1001, 1002, 402 N.Y. S.2d 639, 641 (2d Dep't 1978); *Legros v. Irving*, 77 Misc.2d 497, 499, 354 N.Y.S.2d 47, 50 (Sup.Ct.N.Y.Co.1973)." *Mayes*, 674 F.2d at 181. The Second Circuit in *Mayes v. Leipziger* did not have to decide between these two interpretations of the agency provision of § 302(a), because it held that even under the more lenient definition the agency relationship on which jurisdiction was predicated did not exist. But the weight of recent authority supports using a more informal definition of agency in determining whether jurisdiction exists. See, e.g., *Pasame Realty Corp. v. Ridge Village Partnership*, 568 F.Supp. 483, 484 (S.D.N.Y., 1983). Accordingly, the question is whether Mrs. Molles, with the consent of Mrs. Durand and Mr. Elbogen and under some degree of their control, acted in New York for their benefit.

█ In order to defeat a motion to dismiss for lack of personal jurisdiction under Rule 12(b), the plaintiff needs only to make a prima facie showing of jurisdiction through its own affidavits and supporting materials. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Consequently, it is appropriate to rely on the affidavit of William Reiner, submitted in opposition to the defendants' motion to dismiss, in establishing the extent of Mrs. Molles' contacts in New York with the plaintiffs. Mrs. Molles initially contacted the law firm in March 1959 by letter because she was interested in having the attorneys represent her family before the Foreign Claims Settlement Commission. (Reiner Affidavit, dated March 21, 1983, p. 3) Thereafter, on March 26, 1959, she came to the plaintiffs' office and had a lengthy discussion with Paul and William Reiner regarding claims in her own behalf and on behalf of her sister and brother and her mother's estate. *Ibid.* At that time she left documents with the attorneys regarding all these claims. Mrs. Molles had several other meetings with the attorneys at which all of her family members' claims were discussed. One of these meetings occurred on May 7, 1959 (Reiner Aff., p. 4), and two meetings took place in October of 1959 (Reiner Aff., pp. 7–8). At these meetings Mrs. Molles provided the attorneys with information regarding the extensive property belonging to the Elbogen family in Czechoslovakia. At the March or May meeting, William Reiner explained to Mrs. Molles what the attorneys' fee would be, and told her that individual retainer agreements should be signed by her, by her brother, and by her sister both individually and as executrix of their mother's estate. Mrs. Molles agreed that this should be done and instructed Mr. Reiner to mail out the retainer agreements. (Reiner Aff., p. 4.) These were signed by Mrs. Durand in Boston and by Mr. Elbogen in Frankfurt, Germany and returned to the attorneys. (*Ibid.* pp. 4–5.) In addition to the oral information and documents that Mrs. Molles gave to the attorneys at these meetings, she sent them information in letters dated May 11, 1959 (Reiner Aff. p. 4), and December 21, 1959 (Reiner Aff. p. 8).

█ Based on these facts it can be concluded that Mrs. Molles' various visits to and communications with the attorneys in New York were for the benefit of her brother and sister as well as herself. It was Mrs. Molles who took charge of arranging for the attorneys to represent the claims of the whole family before the commission, which led eventually to the award of money by the Commission to the mem-

bers of the Elbogen family. The next question is whether Mrs. Molles did this with the consent of her brother and sister and under some control by them. Mrs. Durand's consent to Mrs. Molles' representation of her is shown by her letter of July 23, 1959 to the attorneys. (Attached to plaintiffs' affidavit in opposition, dated March 21, 1983, as exhibit 2). In this letter Mrs. Durand stated: "Since my sister was good enough to take on the work connected with these claims, I have not brought any files with me. I hope therefore that you are mailing her copies of *all* claims so that she can cheque [sic] them against her files." In the same letter Mrs. Durand requested that the attorneys send copies of the final versions of the claims and of the signed retainer agreements to Mrs. Molles, and gave Mrs. Molles' current address for that purpose. These statements show that Mrs. Durand knew and approved of the steps Mrs. Molles had taken in dealing with the attorneys. Mr. Elbogen's consent to her activities can be inferred from the fact that he signed the retainer agreement. It would be inappropriate to require a showing of "control" here, because the relationships involved are family relationships, not formal business relationships. If Mrs. Durand or Mr. Elbogen had objected to Mrs. Molles' arrangements, they could have written to the attorneys themselves, or simply not signed the retainer agreements. Based on Mrs. Molles' activities and the relationship between her and her brother and sister, she can be regarded as their agent for jurisdictional purposes.

■ The next issue is whether the contacts Mrs. Durand and Mr. Elbogen had with New York are sufficient for jurisdiction to be exercised. This inquiry does not focus narrowly on where the agreements were executed; instead, since Mrs. Molles can be considered as the agent of her brother and sister within the meaning of § 302(a), her activities in New York can be considered. Where the services were rendered is also relevant.

■ New York courts are divided over the question of whether the retainer of an attorney in New York by an out of state party is a transaction of business within the state so that jurisdiction can be exercised over the non-resident. Some courts have held that jurisdiction did not exist: *Winick v. Jackson,* 49 Misc.2d 1009, 268 N.Y.S.2d 768, (Sup.Ct., 1966); *Law Research Service, Inc. v. Crook,* 36 A.D.2d 912, 320 N.Y.S.2d 851 (1st Dep't, 1971); *Perlman v. Martin,* 70 Misc.2d 169, 332 N.Y.S.2d 360 (Sup.Ct.1972); *Amins v. Life Support Medical Equipment Co.,* 373 F.Supp. 654 (E.D.N.Y.1974). Others have found that jurisdiction existed: *Elman v. Belson,* 32 A.D.2d 422, 302 N.Y.S.2d 961 (2d Dep't 1969); *Mayer v. Goldhaber,* 63 Misc.2d 605, 313 N.Y.S.2d 87 (Sup.Ct.1969); *Polish v. Threshold Technology Inc.,* 72 Misc.2d 610, 340 N.Y.S.2d 354 (Sup.Ct. 1972); *Jecies v. Matsuda,* 503 F.Supp. 580 (S.D.N.Y.1980). The defendant naturally cites the former line of cases, and plaintiffs cite the latter. It is difficult to distill from these cases a rule distinguishing when the retainer of an attorney creates jurisdiction and when it does not, particularly since many of these opinions are not explicit as to the factual and legal bases for denying or granting jurisdiction. Since there is no clear rule on the issue, the issue can be decided under the fairness standard of *International Shoe Co. v. State of Washington Office of Employment Compensation and Placement,* 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The negotiations leading up to the retainer of the attorneys were initiated by Mrs. Molles for the benefit of her brother and sister as well as herself. Her acts can therefore be imputed to them. As a result of the retainer agreements entered into by the parties, a substantial amount of legal work was done by the plaintiffs in New York, which eventually benefitted the Elbogen family by awards of money by the Foreign Claims Commission. Under the circumstances, it does not seem unfair to subject the defendant to the jurisdiction of this court. *Jecies v. Matsuda,* 503 F.Supp. 580 (S.D.N.Y. 1980).

For the foregoing reasons, the motions to dismiss the complaints because of lack of personal jurisdiction over the defendant are hereby DENIED.

SO ORDERED.