**PENNIE & EDMONDS, Plaintiff,**

v.

**The AUSTAD COMPANY, Defendant.**

**No. 88 Civ. 0012 (KC).**

United States District Court,
S.D. New York.

March 15, 1988.

## OPINION AND ORDER

CONBOY, District Judge:

This is an action for payment of legal fees incurred. Plaintiff is a partnership organized and existing under the laws of the State of New York. Affidavit of Frank F. Scheck, executed Feb. 17, 1988, at para. 1. Defendant is a closely-held family-owned corporation incorporated under the laws of the State of South Dakota. Affidavit of Oscar Austad, executed Jan. 21, 1988, at para. 7. The action is before the court on defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. Rule 12(b)(2) for lack of personal jurisdiction.

## FACTS

In 1982, Anthony Antonious filed a lawsuit in the United States District Court for the District of Maryland, alleging infringement of his original patent on a golf glove. Scheck Aff. at para. 11. Thirty-one defendants were named. *Id.* Some of the defendants were customers of Dorson Sports, Inc., which was obligated to defend them. *Id.* Dorson's president, Richard Goldstein, was referred to plaintiff law firm; Goldstein retained plaintiff to represent its customers in the Maryland action. *Id.* Pennie & Edmonds specializes in patent litigation. *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 224 (8th Cir.1987).

During this time, Antonious was prosecuting another infringement suit on the same patent. Scheck Aff. at para. 12. In the second action, the court declared the original patent invalid. *Id.* In light of this ruling, the Maryland District Court proceeded to grant Dorson's motion to dismiss the first action. *Id.* at para. 13.

Antonious filed an application for reissue of the invalid patent in the United States Patent and Trademark Office. *Id.* at para. 14. On March 4, 1984 the Patent and Trademark Office granted the application. *Id.* Counsel for Antonious sent letters to those in the glove business charging infringement of the reissue patent. *Id.*

Goldstein returned to Pennie & Edmonds for their opinion on the validity of the reissue patent. *Id.* at para. 15. Pennie &

Ira A. Schocket, Goodkind, Wechsler, Labaton and Rudoff, New York City, for plaintiff.

James R. Kahn, Dorsey and Whitney, New York City, Steven W. Sanford, Cadwell, Sanford and Deibert, Sioux Falls, S. Dak., for defendant.

Edmonds determined "there were reasonably good arguments that the reissue patent should be held invalid and/or unenforceable," listing three arguments. *Id.*

On May 14, 1984 Pennie & Edmonds received a letter dated May 11, 1984 from Oscar Austad, president of "Austad's" (The Austad Company). Exhibit 1 to Scheck Aff. The letter referred to the letter sent by Antonious's counsel, and continued:

I have just spoken with Dick Goldstein of Dorson Sports. He convinced me that we should join with his company, Champion Golf, and other vendors of golf gloves.in retaining you to file a Declaratory Judgment Action against Mr. Antonious.

*Id.* Shortly thereafter, Robert M. Chiaviello, Jr., Esq., then of Pennie & Edmonds, telephoned Oscar Austad. *See* Affidavit of Robert M. Chiaviello, Esq., executed Feb. 18, 1988, at para. 5. Chiaviello explained to Austad that a meeting of prospective members of the group seeking Pennie & Edmonds's representation would occur in New York on May 18, and that he should attend. *Id.* Austad allegedly told Chiaviello that he, Austad, need not personally attend because Goldstein would be attending the meeting. *Id.* at para. 6. Austad said he trusted Goldstein's judgment and would agree with whatever decisions Goldstein made at the meeting. *Id.*

At the meeting, Pennie & Edmonds made an initial estimate of litigation expenses of $250,000. Scheck Aff. at para. 22. After discussing the issues, all of the representatives in attendance stated their intention to retain Pennie & Edmonds and proceed with the declaratory judgment lawsuit. *Id.* at para. 23. The group decided that each member would pay an equal share of Pennie & Edmonds's fees and disbursements. *Id.* at para. 24. It was also agreed that the Austad Co. would be a named plaintiff in the action. *Id.* at para. 25.

In a letter dated October 15, 1985 to Goldstein, Oscar Austad stated: "I am beginning to question very seriously whether I made the right decision in joining the law suit against Antonious." *See* Exhibit 2 to Scheck Aff. Austad stated that while he was led to believe his company's share of legal fees would be about forty thousand dollars, he had been billed already for more than that, and yet the case was still in the pre-trial stage. *Id.* Austad also stated: "It also seems to me that while our attorneys are very capable and doing the best job of any law firm in the country, their fees are ridiculously high." *Id.* Austad did note that he had "paid all invoices to the attorneys up to the last three months." *Id.* At some point in this period, Austad told Scheck of his concern. Scheck Aff. at para. 28. On January 17, 1986 Oscar Austad telephoned Scheck and advised him that The Austad Company was withdrawing from the litigation. *Id.* at para. 37. At the time, The Austad Company's share of expenses that were still owing was $39,023.66. *Id.* at para. 38.

On April 25, 1986 The Austad Company sued Pennie & Edmonds in the United States District Court for the District of South Dakota. *Id.* at para. 39. The Austad Company alleged breach of fiduciary duty and professional negligence stemming from Pennie & Edmonds's representation of it in the patent litigation. *See Austad Co.*, 823 F.2d at 225. The district court granted Pennie & Edmonds's motion to dismiss for lack of personal jurisdiction. *Id.* The Eighth Circuit affirmed the dismissal. *Id.* at 227.

On January 4, 1988 Pennie & Edmonds commenced this breach of contract action, seeking its fees. Plaintiff invoked the court's jurisdiction under 28 U.S.C. § 1332(a). Defendant responded with this motion.

## LEGAL ANALYSIS

### A. Statutory basis of jurisdiction

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963) (en banc). As no evidentiary hearing has been held in this matter, plaintiff need make only a *prima facie* showing by its

pleadings and affidavits that jurisdiction exists. *CutCo Indus.*, 806 F.2d at 365; *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). The documents presented to the court are construed in the light most favorable to plaintiff and all doubts are resolved in its favor. *CutCo Indus.*, 806 F.2d at 365; *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

■ Initially, the court rejects defendant's novel theory, for which no case authority is cited, that there is a "mutuality requirement" in personal jurisdiction determinations. Defendant argues that because the court in South Dakota dismissed defendant's action against plaintiff for lack of personal jurisdiction, *see Austad Co. v. Pennie & Edmonds*, 823 F.2d at 225, this court must dismiss plaintiff's action against defendant for the same reason. *See* Defendant's Memorandum in Support of Its Motion to Dismiss, dated Jan. 25, 1988, at 12; Reply Brief of Defendant in Support of Its Motion to Dismiss, dated Feb. 24, 1988, at 6–7. The argument is without merit. The focus of the jurisdictional inquiry is on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). Plaintiff's contacts with New York or any other jurisdiction do not form any part of this inquiry. *Id.* at 779–80, 104 S.Ct. at 1480–81.

■ Plaintiff, in its defense of this motion, has not disputed defendant's contention that one of New York's two long-arm statutes, N.Y. CPLR § 301 (McKinney 1972), is inapplicable "because defendant is not 'doing business' in New York with the type of regularity, permanence and continuity required" by that statute. *See Amins v. Life Support Medical Equip. Corp.*, 373 F.Supp. 654, 656 (E.D.N.Y.1974). Plaintiff relies on New York's other long-arm statute, N.Y. CPLR § 302 (McKinney 1972), which states in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court

may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent: 1. transacts any business within the state." *Id.*

Defendant does not dispute that an attorney-client relationship existed between itself and plaintiff. Indeed, defendant's own lawsuit was predicated on this relationship. *See* 823 F.2d at 226. Defendant asserts, however, that it transacted no business in New York during the course of the relationship.

The New York cases make clear that the "mere fact of being a New York lawyer engaged to perform legal services in New York is [not] enough" to satisfy CPLR § 302(a)(1). *See Perlman v. Martin*, 70 Misc.2d 169, 170, 332 N.Y.S.2d 360, 362 (Sup.Ct.1972). Thus, jurisdiction was found not to exist where a New York attorney went to another state to solicit and accept employment, *see Life Support Medical Equip. Corp.*, 373 F.Supp. at 658, or where the client retained the attorney by telephone from another state, *see Perlman v. Martin*, 70 Misc.2d at 171, 332 N.Y.S.2d at 363. For jurisdiction to exist, "[t]he client himself must have engaged in purposeful activity within the State, or have done so through his agent." 70 Misc.2d at 171, 332 N.Y.S.2d at 363; *see Winick v. Jackson*, 49 Misc.2d 1009, 1009, 268 N.Y.S. 2d 768, 768 (Sup.Ct.1966). These purposeful activities must bear directly on the cause of action; they must "bear a substantial relationship to the transaction out of which [plaintiff's] cause of action arose." *Beacon Enters. v. Menzies*, 715 F.2d 757, 764 (2d Cir.1983) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981)).

Defendant asserts that it was solicited to join the litigation by Goldstein, Pennie & Edmonds's existing client. *See* Defendant's Memorandum in Support at 8–9. Plaintiff denies soliciting defendant. *See* Scheck Aff. at para. 16; Chiaviello Aff. at para. 4. Whether Goldstein acted as plaintiff's agent prior to May 11, 1984 is irrelevant. Critical to the determination of this motion is a determination whether Gold-

stein acted as defendant's agent at the May 18, 1984 meeting at plaintiff's office. For purposes of determining whether an agency exists under N.Y. CPLR § 302, "courts have focused on the realities of the relationship in question rather than the formalities of agency law." *CutCo Indus.*, 806 F.2d at 366. Among the factors considered are whether the nondomiciliary consented to the actor's conduct, whether the nondomiciliary benefitted from that conduct, and whether the nondomiciliary exercised "some control" over the agent. *See id.*

Defendant does not rebut plaintiff's assertion that Oscar Austad told Chiaviello Mr. Goldstein's presence at the May 18 meeting made it unnecessary for him to attend, as Austad "trusted Mr. Goldstein's judgment and would agree with whatever decisions Mr. Goldstein made at the meeting." Chiaviello Aff. at para. 6. Defendant argues that this statement is insufficient to create an agency relationship, as a matter of law.

Oscar Austad's statement, which is not denied, demonstrates consent by The Austad Company. Consent is also indicated by defendant's ratification of Goldstein's actions, through its participation in the declaratory judgment action and payment of some of Pennie & Edmonds's bills. Defendant does claim it did not benefit from Pennie & Edmonds's representation, as it settled with Antonious after discontinuing its relationship with plaintiff. This is beside the point. For jurisdictional purposes, "benefit" means that the agent performed an act that advanced the principal's interests. *See, e.g., Wisehart, Friou & Koch v. Hoover,* 473 F.Supp. 945, 949 (S.D.N.Y. 1979); *Kristinus v. H. Stern Com. E. Ind. S.A.,* 433 F.Supp. 303, 305 (S.D.N.Y.1977); *Parke–Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 15, 19, 256 N.E.2d 506, 507, 509, 308 N.Y.S.2d 337, 338, 342 (1970). Defendant received from its agent's conduct the precise benefits it desired, *i.e.,* an explanation of the possible rewards of litigation, the attendant risks, expenses expected to be incurred, and the hiring of counsel to prosecute a lawsuit.

Defendant further contends it was unable to and did not "control" Goldstein. *See* Reply Brief of Defendant at 3. According to defendant, Mr. Austad's statement demonstrates an absence of control, an abdication. *See id.* at 4. Defendant misconstrues the meaning of "control" within this context. All that plaintiff need demonstrate is the degree of control required by common law agency rules. *See CutCo Indus.*, 806 F.2d at 366. "[J]oint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venturer an agent of the others." *Id.* Defendant, in agreeing to join others in prosecuting the declaratory judgment action, which it did with its May 11 letter to plaintiff, entered a relationship, akin to a joint venture, which had as its purpose the establishment of the invalidity of the reissue patent. *See generally* Taubman, *What Constitutes a Joint Venture,* 41 Cornell L.Q. 640, 643–49 (1956) (listing and describing criteria). Defendant thus gained the right and power of control over Goldstein, even if it chose not to direct his actions. *See id.* at 647 ("Within the scope of authority, each venturer, as principal, may control the action of his associates, and vice versa."). This is sufficient "control" for jurisdictional purposes. The court must be ruled by the reality of the situation. The reality of this situation is that The Austad Company took actions subsequent to May 18, 1984 indicating that it considered itself bound by Goldstein's actions at the May 18 meeting.

Nor is jurisdiction in New York improper because the litigation against Antonious was prosecuted in Maryland. Defendant purposefully chose to hire New York counsel. Defendant reasonably should have expected that such counsel would do a substantial amount of its legal work on the matter in New York. The situs of the litigation is not relevant. *See Reiner v. Durand,* 602 F.Supp. 849, 851–53 (S.D.N.Y. 1985) (jurisdiction in New York proper where attorney represented defendants before Foreign Claims Settlement Commission in Washington, D.C.).

The court concludes that Goldstein acted as defendant's agent at the May 18 meet-

ing. This litigation arises out of the contract for services agreed on at that meeting. Goldstein's purposeful activity in attending the meeting does "bear a substantial relationship to the transaction out of which [plaintiff's] cause of action arose." *See Hoover*, 473 F.Supp. at 949. The single meeting in New York is sufficient under these circumstances, where defendant knew the purpose of the meeting, to allow the court to exercise personal jurisdiction over the defendant, because the contract between the parties was created at that meeting. *See George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 649, 653–54, 363 N.E.2d 551, 551–52, 554–55, 394 N.Y.S.2d 844, 845, 847–48 (1977). This court may statutorily exercise personal jurisdiction over the defendant under N.Y. CPLR § 302(a)(1).

B. Constitutional constraints

■ Under the due process clause of the fourteenth amendment of the United States Constitution, before a defendant may be held subject to the personal jurisdiction of another state besides that of his residence or domicile, the defendant must purposefully avail himself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). If the defendant has done so, he should "reasonably anticipate being haled into court" in the forum state. *Id.* at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, ... or of the "unilateral activity of another party or a third person."
> ... Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state.

*Id.* at 475, 105 S.Ct. at 2183–84 (citations omitted) (emphasis in original).

A defendant who has purposefully directed his activities at forum residents must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" as inconsistent with "traditional notions of fair play and substantial justice." *Id.* at 476–77, 105 S.Ct. at 2184. An example would be where conducting the litigation is " 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478, 105 S.Ct. at 2185 (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972) and *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

Defendant has failed to present facts indicating that it would be at a severe disadvantage in litigating in New York. The court is satisfied that the exercise of personal jurisdiction over defendant does not offend the due process clause of the fourteenth amendment.

### CONCLUSION

Defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. Rule 12(b)(2) is denied.