86

DAMON MUSTAIN *et al.*, Plaintiffs-Appellees, *v.* ERIC SHAVER, Defendant-Appellant.

Third District    No. 80-445

Opinion filed May 13, 1981.

Dennis A. DePorter, of Braud, Warner, Nepple & Westensee, of Rock Island, for appellant.

David F. Stoverink, of Capps, Cosgrove, Ancelet & Stoverink, of Carthage, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of McDonough County in favor of plaintiffs-appellees, Damon and Lala Mustain, and against defendant-appellant, Eric Shaver. On May 2, 1977, Shaver attempted to sell life insurance to Lala Mustain on the life of Damon. At the time, Damon was residing at the Carthage Nursing Home, having suffered some mild strokes. Mrs. Mustain executed an application for the life insurance and paid Shaver a premium of $1,650 on that date. This amount represented a one-year annual premium for the insurance policy on Damon Mustain's life. The face amount of the policy was $10,000, but the actual amount depended on the health of the insured.

The application contained the question "is any person listed above currently confined to a hospital or nursing home?" No answer was given to this question, and at trial Shaver testified that Mrs. Mustain told him Damon was "not really confined" to a nursing home. It was important that

Damon not be confined to a nursing home because if he had been, the insurance company would automatically refuse to insure him.

After May 2, Shaver sent in the application to the insurance company along with the company's portion of the $1,650 premium. Shaver sent a letter to the insurance company along with the application, in which he stated that Mr. Mustain was at the nursing home for rest and therapy but was not actually confined to the nursing home. On May 13, 1977, a second application for life insurance was prepared and on May 20, 1977, a third application was made out. At the time that each of these applications was prepared, Mrs. Mustain paid Shaver $1,650 so that she paid him $4,950 in all. The first application was rejected by the insurance company to whom Shaver sent it. The second and third applications were never sent to any insurance company. Shaver testified at trial that he didn't send in the second and third applications because he was waiting until the first application had been accepted.

■■■ Sometime after June 9, 1977, Shaver received the rejection of the first application along with the refund of the first premium. He returned the refund check to Mrs. Mustain, who then endorsed the check and gave it to Shaver for him to find an insurance company that would issue insurance on Mr. Mustain. This refund check was deposited in his premium trust account at the Bank of Galesburg, along with the money from the other two applications. During the period from June 1977 to October 1978, however, various discrepancies arose regarding the amount of money which the trust account contained, and it appears that Shaver may have withdrawn funds for his own use to which he was not entitled. The Mustains requested the return of their $4,950, and when Shaver did not return it, they filed the instant action to recover the money. Shaver subsequently repaid the money, and the plaintiffs filed a three-count amended complaint. In count I they acknowledged the money had been repaid but claimed that the failure and refusal to return the money earlier constituted unreasonable and vexatious delay entitling plaintiffs to recover interest at five percent per annum for a total of $338.13. Count II alleged fraud on Shaver's part in promising to find life insurance policies for Damon Mustain and requested $25,000 in punitive damages in addition to the interest. Count III alleged that Shaver recklessly or intentionally and in bad faith induced the Mustains to make the payments to obtain insurance policies which the Mustains claim Shaver knew were not available and asked for $25,000 in punitive damages in addition to the interest.

Prior to trial, Lala Mustain died and Damon Mustain was declared to be a disabled person. The interests of their respective estates are represented by their son, Albert Mustain, as executor of his mother's estate and guardian of his father's estate. The trial was held without a jury, and the

court specifically found fraud and deceit to exist on Shaver's part. The court stated that punitive damages were called for and awarded the plaintiffs $1,500 as well as the requested interest.

On appeal, the only issue raised by the defendant is whether the evidence is sufficient to support the trial court's findings. We find the evidence to be insufficient and reverse.

The finding of fraud by the trial court was a finding of fact which we may not set aside unless it was contrary to the manifest weight of the evidence. We believe the finding of fraud in the instant case was indeed contrary to the manifest weight of the evidence. For a party to prove fraud, he must prove that: (1) the defendant made a false representation as to a material matter; (2) the defendant knew it to be false with the intent to deceive the plaintiffs; (3) the plaintiff believed the defendant's representation; (4) the plaintiff reasonably relied upon the defendant's representation; and (5) the plaintiff acted on the representation to his injury. (*Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 302 N.E.2d 382.) It is clear that in the instant case, the plaintiff believed the defendant's representation about obtaining insurance and that the plaintiff reasonably relied upon the defendant's representation. However, after reviewing the record, we find no evidence that at the time the Mustains paid Shaver the money, he had made any false representations and that he intended to deceive the Mustains. Shaver received the first $1,650 from the Mustains on May 2, 1977, when the first application was filled out. That application was promptly sent to the insurance company. The second and third applications were made and the money paid to Shaver prior to the insurance company's decision on the first application. Shaver stated that he was holding these applications pending the disposition of the first application. We see nothing unusual in this, and certainly do not see it as evidence of fraud. Nor do we find anything sinister in the fact that the Mustains paid Shaver the premium at the time the application was filled out.

Plaintiffs contend that there is evidence of fraud in that Shaver promised to find the Mustains insurance and then failed. We disagree. There is no evidence in the record to indicate that when Shaver told the Mustains he would obtain insurance for them, he knew this to be an untrue statement. Nor is there any evidence that he intended to deceive them. The record simply shows that he filled out an application and sent it to the insurance company. This is not evidence of fraud.

Plaintiffs also claim that the discrepancies which later arose in Shaver's trust account are evidence of his intent to defraud the Mustains. We disagree. Shaver placed the $1,650 refund check in his trust account along with another $1,155, which was the amount which the insurance company would have charged had the two later applications been accepted. Therefore, the trust account should have had a balance of at

least $2,805 at all times. On several occasions, however, the balance was well below that, once falling as low as $73.48. It is clear that Shaver withdrew the money and used it for his personal purposes. While such an action is reprehensible and we condemn such an action, we do not find it to be evidence that at the time Shaver filled out the applications he intended to defraud the Mustains. The fact that months later Shaver breached his trust to the Mustains is not probative of whether or not there was the requisite intent to defraud the Mustains at the time he filled out the applications.

Because there was no evidence proving that at the time Shaver filled out the applications, he was making any representations knowing they were false and intending to deceive the Mustains, the trial court's finding of fraud was erroneous. Accordingly the judgment of the circuit court of McDonough County is reversed.

Reversed.

BARRY and HEIPLE, JJ., concur.