(No. 82-CC-2578—▮▮▮▮▮

LESTER OETGEN, Claimant, v. THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Respondent.

*Order filed March 6, 1984.*

RAMMELKAMP, BRADNEY, HALL, DAHMAN & KUSTER, for Claimant.

WARREN H. GLOCKNER, for Respondent.

HOLDERMAN, J.

Claimant's complaint sets forth that he was injured while an employee of Respondent on July 19, 1967. He

was compensated for medical benefits and other benefits due him under the Workers' Compensation Act, for temporary disability, for loss of 28% use of lower extremity and for a number of weeks for total disability.

However, he alleges that additional benefits were due him for the years 1977, 1978, 1979, and 1980 in the total amount of $2,017.99, under provisions of an Act adopted in 1975 allowing rate adjustments for each of those years. He further stated that Respondent on September 6, 1973, tendered him a settlement sheet which he signed but which neglected to include provisions for any rate adjustments.

It appeared at the hearing that Claimant was compensated for the year 1980, and therefore his claim was reduced to $1,304.83 for 1977, 1978, and 1979.

Claimant's position is that the Respondent acted fraudulently in submitting the settlement sheet without such a provision, and that he signed it believing that all his workers' compensation entitlements were included therein.

He alleges that the settlement sheet was made "with intent to induce him into signing", and that "Respondent had secured for him all benefits" under the Act to which he was entitled.

In paragraph 10 of his complaint he alleges:

"Respondent *knew such representation was false*; that in fact unless an award was given or settlement contract approved, Claimant could not receive full benefits."

In paragraph 11.4 he states that Respondent "represented to Claimant that there had been a change in the

law and that once certain forms were signed, Claimant would be receiving his rate adjustment." And in 11.5 that "Claimant signed the forms in reliance as to the representations made by Respondent."

Claimant first sought on November 12, 1979, to have this claim for rate adjustment compensation adjudicated before the Industrial Commission, but his claim was denied on the ground that the Commission lacked jurisdiction to allow rate adjustments Claimant would have received had he filed before July 1, 1975. The Commission lacked jurisdiction to allow rate adjustments Claimant would have received had he filed before July 1, 1975. The Commission did decide, on a separate request, that Claimant was entitled to a rate adjustment compensation under section 8(g) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, 138.8(g)), and was granted an award which resulted in him receiving the rate adjustment, but not including the years 1977, 1978, and 1979.

An evidentiary hearing was held July 7, 1983, to determine if the facts showed Respondent had indeed practiced fraud on the Complainant.

In his brief Claimant states:

"The basis of Claimant's argument is that the Respondent entered into a 1973 'green sheet settlement' in violation of Section 23 of the Illinois Workers' Compensation Act and fraudulently represented to Claimant that he would receive the full benefits under the Workers' Compensation Act. An Application for Adjustment of Claim was not filed until 1979 and a Decision of the Arbitrator was not entered until February 27, 1979, awarding Petitioner a pension for life. This delay resulted in Claimant being denied rate adjustments for the years

1977, 1978 and 1979, as provided by Section 8(g) of the Workers' Compensation Act."

Statutory provisions applicable are the following found in section 8 of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138).

### Section 8(g), provides in part:

"Every award for permanent total disability entered by the Commission on or after July 1, 1965, under which compensation payments shall become due and payable after the effective date of this mandatory Act and every award for death benefits for permanent total disability entered by the Commission on or after the effective date of the amendatory Act shall be subject to annual adjustments as to the amount of the compensation rate therein provided. Such adjustments shall first be made on July 15, 1977 and all awards made and entered prior to the effective date of this amendatory Act and on July 15 of each year thereafter. In all other cases such adjustments shall be made on July 15 of the second year next following the date of the entry of the award and shall further be made on July 15 annually thereafter. . ."

### Section 7(f) (Ill. Rev. Stat. 1979, ch. 48, par. 138.7(f)) provides in part:

"On July 15, 1976 and on January 15, 1977, and on each year thereafter the employer shall further pay a sum equal to one-half of one percent of all compensation payments made by him after the effective date of this Amendatory Act of 1975, either under this Act or under the Workers' Occupational Diseases Act, whether by lump sum settlement or weekly compensation payments, made during the first six months and during the second six months respectively of the fiscal year next preceding the date of the payments. . ."

### Section 23 (Ill. Rev. Stat. 1979, ch. 48, par. 138.23) provides in pertinent part:

"No employee, personal representative, or beneficiary shall have power to waive any of the provisions of this Act in regard to the amount the compensation which may be payable to such employee, personal representative or beneficiary hereunder except after approval by the Commission and any employer, individually or by his agent, service company or insurance carrier who shall enter into any payment purporting to compromise or settle the compensation rights of an employee, personal representative or beneficiary without first obtaining the approval of the Industrial Commission as aforesaid shall be barred from raising the defense of limitation in any proceedings subsequently brought by such employee, personal representative or beneficiary."

It appears from the testimony that Max N. Pike was employed by the University of Illinois from 1956 to

1979 as a supervisor of accident compensation, handling contacts with various claimants who had suffered an injury. He testified that his function was managing claims so that "Mr. Oetgen would receive benefits from the University under the Act." In connection with his claim, Claimant contacted Mr. Pike on many numerous occasions. On September 6, 1973, a document (green sheet settlement) was signed by Claimant and Max Pike which set forth, in itemized form, the benefits which Claimant would be entitled to for his injury of July 19, 1967.

In 1978, according to Mr. Pike, Claimant contacted him and stated he had been advised of a change in the Workers' Compensation Act which would entitle him to additional benefits. Pike stated he did not know of the change. The change in the Act provided for certain rate adjustments. This change in the Act was made after the September 6, 1973, memorandum.

At a hearing before the Industrial Commission on October 21, 1980, Mr. Oetgen stated that at the time he signed the memo of September 6, 1973, Mr. Pike represented that the benefits listed would be complete benefits due him. He further testified that Mr. Pike called him in 1978 and said there would be an adjustment in his pension because of a new law that was passed.

Claimant argues that Respondent violated section 23 of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.23) by entering into the "agreement" of September 6, 1973, and by representing that he would receive full benefits under the Act, and that in so doing it committed a fraud on Claimant.

It appears that Claimant did place complete confidence in Mr. Pike in the handling of his claim. He

complains that Respondent waited three years after the 1975 amendment to advise him on the rate adjustments he could be entitled to. His position is that Respondent prepared the green sheet settlement with the intent that Claimant rely on it and *do nothing further* and all benefits, even future benefits which were then unknown, would be forthcoming.

Numerous cases were cited by Claimant to support the principle that an employer can't lull a Claimant into a false sense of security and allow the statute of limitations to expire. In such cases, the employer has been held estopped from invoking the statute of limitations. These cases are sound in their holding but do not control this case based on an alleged false misrepresentation as we find no evidence that there was indeed a false representation on September 6, 1973.

In reply the Respondent argues that the case before the Court is one based on fraud; that Claimant has claimed the green sheet settlement sheet was presented to him with a representation that Respondent had secured all benefits for him and that "Respondent knew such representation to be false."

The essential elements of fraud are a misrepresentation of a material fact, coupled with *scienter*, deception and injury. *Mustain v. Shaver* (1981), 96 Ill. App. 3d 86, 420 N.E.2d 1197.

The record fails to contain any evidence of a misrepresentation with intent to defraud made by the Respondent. Even though Claimant relied on Mr. Pike and even assuming that he was told the benefits in the green sheet settlement were full benefits, how can that be construed to be a false statement when the Act providing for rate adjustments was not enacted until July 1, 1975?

This was a future event and could not have been anticipated in any representation made in 1973. There was no express statement in the green sheet of September 6, 1973, that constituted a misrepresentation, and the evidence does not establish any verbal representation that would be the basis of fraud.

We find scant evidence to support the conclusion that Mr. Pike had a duty to alert himself to future changes in the Workers' Compensation Act and to notify Claimant of such changes. Nor do we find that Claimant has proved that there was a fraudulent misrepresentation by Respondent when the green sheet settlement was executed.

Basically, the Claimant's position is that when the Act was amended in 1975, the Respondent should have been aware of it and advised the Claimant what to do. We do not feel the testimony supports this conclusion, and even if it did, Respondent's failure would not constitute fraud at the time of the signing of the green sheet settlement. At best he presents only an appeal to fairness because Respondent had helped him at the outset of his claim, but certainly he failed to meet his burden of proving fraud by Respondent.

Claimant has failed to meet its burden of proving fraud as alleged in its complaint.

Claim denied.